1  DAVID R. ONGARO, State Bar No. 154698
       dongaro@ongaropc.com
2  EUGENE B. FRID, State Bar No. 321265
       efrid@ongaropc.com
3  ONGARO PC
   50 California Street, Suite 3325
4  San Francisco, CA  94111
   Telephone: (415) 433-3900
5  Facsimile: (415) 433-3950

6
   Attorneys for Plaintiff
7  MARTIFER-SILVERADO FUND I, LLC

8
                       UNITED STATES DISTRICT COURT
9
                      NORTHERN DISTRICT OF CALIFORNIA
10
                           SAN FRANCISCO DIVISION
11

12

| | |
|---|---|
| MARTIFER-SILVERADO FUND I, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD., a Chinese corporation; SUZHOU TALESUN SOLAR TECHNOLOGY CO., LTD., a Chinese corporation; TALESUN SOLAR USA, LTD., a Delaware corporation; and DOES 1 through 5, inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) FRAUDULENT INDUCEMENT;**<br><br>**(2) FRAUDULENT CONCEALMENT;**<br><br>**(3) NEGLIGENT MISREPRESENTATION; and**<br><br>**(4) CONSPIRACY / AIDING AND ABETTING**<br><br>Jury Trial Requested |

COMPLAINT
Case No.

1. This case involves a conspiracy orchestrated by Chinese-based parent companies who used their powerless U.S. subsidiary to defraud a solar project investment company.

**Jurisdiction and Parties**

2. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332 and diversity of citizenship, with an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

3. Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

4. Plaintiff Martifer-Silverado Fund I, LLC ("MS-Fund") is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in San Francisco, California. MS-Fund is a joint venture between Martifer Solar USA and Silverado Power, LLC that was responsible for overseeing the development of a large pipeline of utility-scale solar projects.

5. Defendant Zhongli Science and Technology Group Co., Ltd. ("Zhongli Group") is a Chinese corporation doing business in the United States, including California, through its subsidiaries, with its principal place of business located at No. 8 Changkun Road, Southeast Economic Development Zone, Changshu, Suzhou, Jiangsu, CHINA.

6. Defendant Suzhou Talesun Solar Technology Co., Ltd. ("Talesun Solar") is a Chinese corporation doing business in the United States, including California, through its subsidiaries, with its principal place of business located at No. 1 Talesun Road, Shajiabang, Changshu, Suzhou, Jiangsu, CHINA.

7. On information and belief, Zhongli Group, traded on the Shenzhen stock market, is the parent corporation for at least nine technology subsidiaries, including Talesun Solar who oversees the parent's operations in the photovoltaic (*i.e.*, solar panel) industry.

8. On information and belief, Talesun Solar itself has more than a dozen subsidiaries worldwide, including defendant Talesun Solar USA, Ltd. ("Talesun USA") who conducted business in the United States on behalf of, and for the sole benefit of, its parent corporations in China. Talesun USA described its business as constructing and developing utility-scale solar

-2-

COMPLAINT
Case No.

projects in the United States, and the central purpose of this subsidiary was to distribute solar panels manufactured by its parent companies in China.

9. At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiff.

## General Factual Allegations

*The Relevant Individuals*

10. At all times relevant hereto, Mr. Baixing Wang served as Chairman of the Board for Zhongli Group, Talesun Solar, Talesun USA, and, on information and belief, every other one of Zhongli Group's subsidiaries.

11. During the relevant time period, Mr. Frank (Fujun) Qi served as an executive officer of both Talesun Solar (Vice President) and Talesun USA (Chief Executive Officer).

12. During the relevant time period, Mr. Ning (Eric) Ma served as an executive officer of Talesun USA (General Manager).

13. On behalf of Talesun USA, Mr. Ma executed three separate contracts with M-S Fund concerning the sale and purchase of 36 distinct solar project companies, including a November 28, 2012 Master Membership Interest Purchase Agreement ("MIPA"),[1] a December 31, 2012 Standstill Agreement, and an August 30, 2013 Letter Agreement (collectively, the "Agreements"). The Agreements were heavily negotiated between M-S Fund's outside counsel (Orrick, Herrington & Sutcliffe LLP) and Talesun USA's outside counsel (Reed Smith LLP, whose bills, on information and belief, were consistently paid by Talesun USA's Chinese parent corporations).

---

[1] Following execution of the MIPA, Talesun USA partially performed based on funds wired from an entity called Talesun Solar Hong Kong Ltd.

-3-

COMPLAINT
Case No.

14. Zhongli Group and Talesun Solar had full knowledge of Mr. Ma's and Talesun USA's negotiations and contracts with M-S Fund.

15. Pursuant to Section 5.1 of the MIPA, Mr. Ma represented that Talesun USA had the authority and power to enter into the MIPA and to perform its obligations without obtaining any further consent or approval from any third party.

16. Pursuant to Section 5.1.8 of the MIPA, Mr. Ma represented that Talesun USA had sufficient liquid capital (or committed sources of capital) to permit it to timely perform its obligations under the MIPA, that its performance was not subject to any financing contingency, and that it knew of no circumstances or conditions that could reasonably be expected to prevent the contract's performance.

17. Mr. Ma executed the Standstill Agreement as Talesun USA's "Authorized Signatory," and unequivocally confirmed under penalty of perjury, as recently as July 2018, that he was not only authorized to execute the Standstill Agreement but had received board approval from both Talesun USA and Talesun Solar before executing this contract (including approval from Frank Qi, who after the contract's execution and breach confirmed that "Talesun HQ top management has fully understood these projects and ready for start-up project movement.").

18. Before executing the Agreements, M-S Fund conducted extensive due diligence on Talesun USA's ability to perform. From the inception of Talesun USA's expression of interest in acquiring the project companies from M-S Fund in the summer of 2012, Talesun USA touted its "strong financial capability [] backed by Zhongli Sci-Tech Group." As early as August 2012, Talesun USA – on Zhongli Group letterhead – represented that it had "allocated dedicated resources to the negotiation and the implementation" of the projects, including "confidence to start the construction of at least 14MWAC projects in Q4, 2012."

19. On August 3, 2012, Talesun USA's CEO Mr. Qi and General Manager Mr. Ma signed a Letter of Intent ("LoI") representing Talesun USA as a subsidiary of Talesun Solar, a member of the Zhongli Group. As proof of its financial backing, Talesun Solar shared with M-S Fund that the Zhongli Group's revenues "in the past three years are . . . $266M, $460M, and $760M respectively." In this initial LoI, Talesun USA represented that it would "use its own

-4-

COMPLAINT
Case No.

capital to fund the project acquisition.  If necessary, Zhongli Group can provide a Corporate Guaranty for the payment."

20.     On August 27, 2012, Talesun USA signed a second LoI concerning an expanded portfolio of project companies which larger portfolio mirrored the scope of projects eventually covered in the MIPA.  This second LoI contained the same representations and warranties concerning Talesun USA's financial capabilities, and also included a 30-day exclusivity provision during which M-S Fund agreed to forego other potential opportunities in exchange for Talesun USA's payment of $500,000.  Consistent with Talesun USA's representations that it had financial backing from its corporate parents, Talesun USA processed the exclusivity deposit "via its HQ"; M-S Fund eventually received the $500,000 wire from an entity called "Talesun Solar Hong Kong Limited" which entity shares the same physical address in China as Zhongli Group.

21.     In the fall of 2012, Talesun Solar invited M-S Fund member Hans Isern to attend a signing ceremony in Melbourne, Australia, to be attended by Mr. Wang (Zhongli Group's founder and Chairman).  Mr. Isern did, in fact, travel to Australia to meet with Chairman Wang, and during a signing ceremony Chairman Wang executed a Memorandum of Understanding mirroring the terms of the second LoI.  Chairman Wang signed the MOU on behalf of an entity called "Zhongli Talesun Solar Co. Ltd." (now known as Suzhou Talesun Solar Technology Co., Ltd. aka Talesun Solar).  Talesun USA's Chinese parent companies were well aware of and expressly approved the commercial terms eventually captured in the MIPA.

22.     During further due diligence, Talesun Solar provided M-S Fund with three years of financial reports for Zhongli Group, expressly suggesting that the parent's financial reports would serve as a better indicator of Talesun USA's available capital.  Talesun USA also provided M-S Fund with financials for Talesun Solar.  Prior to entering into the Agreements, M-S Fund reviewed and relied on these financials along with Talesun USA's express promises of financial backing from its Chinese parent companies.

23.     On November 25, 2012, Talesun Solar informed M-S Fund that its senior leadership and parent corporation (Zhongli Group) now wanted "Talesun Solar USA Ltd." to

-5-

COMPLAINT
Case No.

1  execute the transaction documents, not "Zhongli Investment and Development Company" which
2  had previously been the intended signatory.
3       24.    On November 27, 2012, Mr. Ma shared that "our board approved the deal!" and
4  that "we can . . . close some projects for total $1MM right after the signing."
5       25.    On December 31, 2012, as the parties were negotiating the Standstill Agreement
6  which arose from Talesun USA's admitted failure to perform under the MIPA, Talesun USA
7  provided M-S Fund with audited financials for Talesun Solar as evidence that Talesun USA could
8  satisfy the "Parent Guaranty; Collateral or Letter of Credit" component set forth in section 1.1(c)
9  of the Standstill Agreement. M-S Fund reviewed and relied on these financials as an inducement
10 to entering into the Standstill Agreement.
11      26.    On December 31, 2012, Talesun USA's outside counsel at Reed Smith LLP
12 forwarded M-S Fund a scan of check #1580, signed by Mr. Ma and drawn on the Wells Fargo
13 bank account for Talesun USA, for $10,971,416.50, which check Reed Smith LLP was to hold in
14 escrow as the Closing Payment required under the Standstill Agreement. On information and
15 belief, at no point did Talesun USA have funds in its account sufficient to cover the check
16 presented to M-S Fund by Reed Smith LLP.
17      27.    Talesun USA ultimately failed to perform its obligations under the MIPA, the
18 Standstill Agreement, and Letter Agreement.
19      28.    In July of 2018, Mr. Ma testified under oath that:
20           A.    Talesun Solar owned 100% of Talesun USA's equity;
21           B.    his main responsibility as Talesun USA's General Manager was to help
22 Zhongli Group and Talesun Solar "achieve their goals in the USA market";
23           C.    Talesun USA would purchase solar panels, and receive its funding, directly
24 from Talesun Solar;
25           D.    while he had a certain level of authority to bind Talesun USA, at some point
26 he required approval from Talesun USA's board, and at a higher level he required approval from
27 Talesun Solar;
28

-6-

COMPLAINT
Case No.

E. he was in communication with Mr. Frank Qi and Mr. Baixing Wang concerning Talesun USA's dealings with M-S Fund;

F. for the transaction with M-S Fund, he requested, and received, approval from both Talesun USA's and Talesun Solar's boards (including, ultimately, the approval of Mr. Wang);

G. he specifically received approval to enter into the Standstill Agreement from both the Talesun USA and Talesun Solar boards; and

H. he does not know why Talesun USA failed to honor its obligations under the Agreements, because that decision was made "above his head."

29. On or about January 24, 2019, Talesun USA submitted a declaration from Mr. Changqing Hu, a member of its board of directors, asserting for the first time that Mr. Ma possessed neither express nor implied authority to bind Talesun USA. Mr. Hu's declaration also stated that Mr. Ma lacked authority of any kind to execute the Standstill Agreement, and that – contrary to Mr. Ma's representations – the Talesun USA board did not authorize him to execute the Standstill Agreement.

30. At no point prior to 2019 had Talesun USA or any of its related entities or representatives claimed that Mr. Ma lacked authority to bind Talesun USA or to enter into the Standstill Agreement, including transaction counsel for Talesun USA who engaged in significant negotiations with M-S Fund concerning Talesun USA's failure to perform under the Agreements.

31. In July 2019, a representative from Talesun Solar testified that Zhongli Group's U.S. subsidiaries are underfunded from the start (some receiving as little as $1,000) and are simply instruments of the Chinese parents, operating solely for their benefit.

32. In July 2019, a representative from Zhongli Group confirmed that the Zhongli Group's U.S. subsidiaries are simply instruments of the Chinese parents, operating solely for their benefit.

33. In this case, Zhongli Group and Talesun Solar used their U.S. subsidiary to advance their own interests, and the subsidiary operated only for the parents' benefit.

-7-

COMPLAINT
Case No.

34. It has recently become clear that Zhongli Group's and Talesun Solar's parental control over Talesun USA pervaded all dealings in this forum, and that Talesun USA was merely an agent through which the Chinese parent corporations conducted business in the United States and, in this instance, California. The separate corporate status of Talesun USA was formal only, without any semblance of individual identity.

35. On information and belief, a unity of interest and ownership between Zhongli Group, Talesun Solar, and Talesun USA exists, such that any individuality and separateness between these entities has ceased. They share the same executive leadership and employees and the Chinese parents exercise control and dominion over Talesun USA with a disregard for the separate legal status of this entity and as a result, an attempt to defraud creditors like MS-Fund. Adherence to the fiction of Talesun USA as a separate entity distinct from Zhongli Group and Talesun Solar would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

### COUNT I
### (Fraudulent Inducement – Against All Defendants)

36. MS-Fund re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 35 of this Complaint.

37. Defendants fraudulently induced M-S Fund to enter into the Agreements through intentional misrepresentations and intentional omissions of key facts. Defendants had a duty to disclose the facts that they omitted from their communications with Plaintiff because (a) they made representations but did not disclose facts which materially qualified the facts disclosed, or which rendered their disclosures likely to mislead; (b) the undisclosed facts were know or accessible only to Defendants; and (c) they actively concealed discovery of the facts from Plaintiff.

38. Through their U.S. subsidiary Talesun USA, Zhongli Group and Talesun Solar made a number of affirmative representations which were intended to induce M-S Fund to enter into the Agreements, including that (a) Talesun USA had the authority and power to enter into the MIPA, (b) Talesun USA could perform its obligations under the MIPA without obtaining any

-8-

COMPLAINT
Case No.

further consent or approval from any third party, (c) Talesun USA had sufficient liquid capital (or committed sources of capital) to permit it to timely perform its obligations under the MIPA, (d) Talesun USA's performance was not subject to any financing contingency, (e) Talesun USA knew of no circumstances or conditions that could reasonably be expected to prevent the performance under the MIPA; and (f) Mr. Ma had full authority to execute both the Standstill and Letter Agreements on behalf of Talesun USA.

39. Defendants also intentionally concealed their position that Mr. Ma lacked authority, generally, to bind Talesun USA, and specifically to bind Talesun USA to the Agreements. Defendants also intentionally concealed their position that neither Mr. Ma nor Talesun USA could conduct material business in the U.S. without Chairman Wang's authorization and approval.

40. Defendants made these intentionally false and/or misleading representations to Plaintiff, and concealed material facts from Plaintiff, so that Plaintiff would enter into the Agreements and expend significant funds to develop the solar projects that were subject to the MIPA. Plaintiff did not know that Defendants' representations and omissions were false and/or misleading. Plaintiff believed these false and/or misleading representations and omissions to be true and complete, and reasonably and justifiably relied upon them. Had Plaintiff known the true facts that Defendants concealed from Plaintiff, it would not have entered into the Agreements and would not have rendered performance thereunder.

41. M-S Fund now knows that these representations were false. For example, according to Mr. Ma, Talesun USA required approval from its Chinese parent corporations to conduct meaningful business in the U.S., including the expenditure of funds required to perform under the Agreements. And although Mr. Ma claimed to have received the necessary approvals to execute the Agreements, he (and Talesun USA) received no support (financial or otherwise) from Zhongli Group or Talesun Solar required for Talesun USA to perform its obligations under the Agreements.

42. Defendants either knew these representations were false when made, or made them recklessly and without regard for their truth.

-9-

COMPLAINT
Case No.

43. Defendants intended that M-S Fund rely on these representations, and M-S Fund reasonably did so in entering into the Agreements.

44. As a result of entering into the Agreements, M-S Fund incurred significant expenses – including remediating problems caused by Defendants' fraud – in an amount to be proven at trial.

## COUNT II
### (Fraudulent Concealment – Against All Defendants)

45. MS-Fund re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 44 of this Complaint.

46. Defendants intentionally concealed their position that Mr. Ma lacked authority, generally, to bind Talesun USA, and specifically to bind Talesun USA to the Standstill Agreement. Defendants also intentionally concealed their position that neither Mr. Ma nor Talesun USA could conduct material business in the U.S. without Chairman Wang's authorization and approval. Defendants also intentionally concealed that Talesun USA had insufficient funds required to perform under the Agreements.

47. M-S Fund did not know of the concealed facts at the time it entered into the Agreements.

48. Defendants intended to deceive M-S Fund by concealing the facts.

49. Had the omitted information been timely disclosed, M-S Fund reasonably would have behaved differently (for example, by negotiating directly with Messrs. Qi and Wang rather than Mr. Ma).

50. M-S Fund was harmed by Defendants' concealment of facts, and Defendants' concealments were a substantial factor in causing its harm.

## COUNT III
### (Negligent Misrepresentation – Against All Defendants)

51. MS-Fund re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 50 of this Complaint.

52. Plaintiff's and Defendants' business dealings constitute a special relationship in that Defendants had sole possession of the knowledge regarding their capital resources and use of

-10-
COMPLAINT
Case No.

that capital. Plaintiff had no way to asses Defendants' capital and willingness to spend it to perform under the Agreements, as this information was purely within the purview of Defendants.

53. Plaintiff specifically informed Defendants that performance under the Agreements was of paramount importance to Plaintiff, and Defendants represented to Plaintiff that they were capable of and committed to performing under the Agreements despite having no reasonable grounds to do so. Specifically, the representations alleged to be false and/or misleading by omission in Counts I and II are incorporated by reference herein, and serve as the basis of Plaintiff's negligent misrepresentation as well. Defendants had unique knowledge regarding their representations to Plaintiff.

54. Defendants knew or should have known that Plaintiff would rely upon the accuracy of their representations in entering into the Agreements and continuing to do business with Defendants and depend on its performance. On information and belief, Defendants intended that Plaintiff rely upon their representations. Plaintiff did in fact rely upon false and/or misleading representations, described above, in deciding to contract with Defendants and continuing to do business with Defendants following their initial failure to perform.

55. Defendants had no reasonable grounds for believing the information they provided to Plaintiff, including their capability and willingness to perform under the Agreements, was correct. Their conduct was at least grossly negligent. Plaintiff reasonably relied on Defendants' assurances and suffered financial loss as a result of their inability to live up to those assurances.

## COUNT IV
### (Conspiracy / Aiding and Abetting)

56. MS-Fund re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 55 of this Complaint.

57. Defendants and each of them shared a common plan to defraud M-S Fund.

58. Defendants and each of them took overt actions in furtherance of this common plan. Plaintiff is informed and believes and based on such information and belief alleges that Defendants aided and abetted each other in furtherance of this common plan. The formation and

-11-

COMPLAINT
Case No.

operation of this common plan resulted in significant damage to M-S Fund and the unjust enrichment of Defendants.

59. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring M-S Fund, and acted with an improper and evil motive amounting to malice, in conscious or reckless disregard of M-S Fund's rights. Because the acts complained of herein were carried out with Defendants' knowledge, in a deliberate, cold, callous, and intentional manner, for the purpose of injuring and damaging M-S Fund, M-S Fund is entitled to recover punitive damages as allowed by law in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment be entered against Defendants, and each of them, and in Plaintiff's favor, as follows:

A. Awarding compensatory and consequential damages to be determined at trial but in no event less than $30,000,000;

B. Awarding punitive damages in an amount to be determined at trial but in no event less than $90,000,000;

C. Awarding costs and disbursements in this action;

D. Awarding prejudgment and post judgment interest; and

E. Awarding Plaintiff such additional and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: July 24, 2019                     **ONGARO PC**

By:   /s/  *David R. Ongaro*
          David Ongaro

Attorneys for Plaintiff
MARTIFER-SILVERADO FUND I, LLC

-12-

COMPLAINT
Case No.