DAVID R. ONGARO, State Bar No. 154698
   dongaro@ongaropc.com
EUGENE B. FRID, State Bar No. 321265
   efrid@ongaropc.com
ONGARO PC
50 California Street, Suite 3325
San Francisco, CA 94111
Telephone: (415) 433-3900
Facsimile: (415) 433-3950

Attorneys for Plaintiff
MARTIFER-SILVERADO FUND I, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARTIFER-SILVERADO FUND I, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD., a Chinese corporation; SUZHOU TALESUN SOLAR TECHNOLOGY CO., LTD., a Chinese corporation; TALESUN SOLAR USA, LTD., a Delaware corporation; and DOES 1 through 5, inclusive,<br><br>        Defendants. | Case No. 4:19-CV-04243-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:     October 15, 2019<br>Time:    2:00 p.m.<br>Location: Floor 4, Courtroom 1<br>Judge:   The Hon. Yvonne Gonzalez Rogers |

## Table of Contents

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL ARGUMENT .................................................................................................... 1

    A. The Court Should Deny Defendants' Motion Under Rule 12(b)(1). ....................... 1

    B. The Court Should Deny Defendants' Motion Under Rule 12(b)(2). ...................... 2

    C. The Court Should Deny Defendants' Motion Under Rule 12(b)(5). ...................... 6

    D. The Complaint Adequately Pleads Fraud. ............................................................... 7

III. CONCLUSION ............................................................................................................. 10

## Table of Authorities

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 4

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) ................................................................................................ 9

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .............................................................................................. 9

*Dev. Corp. of Palm Beach v. WBC Constr., LLC*,
    925 So.2d 1156 (Fla. Dist. Ct. App. 2006) ........................................................................... 3

*Dreier v. United States*,
    106 F.3d 844 (9th Cir. 1996) ................................................................................................ 2

*Fid. Nat. Title Ins. Co. v. Castle*,
    C 11-00896 SI, 2011 WL 6141310 (N.D. Cal. Dec. 8, 2011) ............................................ 10

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) .............................................................................................. 4

*In re GlenFed Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ................................................................................................ 9

*In Re: Chinese-Manufactured Drywall Products Liability Litigation*,
    753 F.3d 521 (5th Cir. 2014) ................................................................................................ 2

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) .............................................................................................. 10

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................................ 8

*V&M Star, LP v. Centimark Corp*,
    596 F.3d 354 (6th Cir. 2010) ................................................................................................ 2

*Vasquez v. Los Angeles Cnty.*,
    487 F.3d 1246 (9th Cir. 2007) .............................................................................................. 8

I.  **INTRODUCTION**

Plaintiff's Complaint alleges that both Zhongli Science and Technology Group Co., Ltd. and Suzhou Talesun Solar Technology Co., Ltd. utilized their U.S.-based subsidiary (Talesun Solar USA, Ltd.) to defraud San Francisco-based Martifer-Silverado Fund I, LLC ("M-S Fund") on a $30.6M purchase agreement for commercial solar projects to be developed in the State of California.  Plaintiff hand-served the Complaint and Summons on Changqing Hu during his deposition in a separate contract action, after he unequivocally acknowledged that he served as either a board member or vice president for each of the named defendants.  As if they needed a reminder, the Complaint provides defendants sufficient notice of their fraudulent scheme, specifying the exact dates and misrepresentations they made which induced M-S Fund to not only grant them exclusive negotiating rights on these projects but ultimately agree to sell the solar projects to them.  Defendants have admitted that their U.S. subsidiary was merely an agent through which the Chinese parents conducted business in the United States; accordingly, there exists no statutory or constitutional impediment to hauling them into Court to defend their fraudulent scheme.  For these reasons, and others described below, the Court should deny Defendants' Motion to Dismiss under Rules 12(b)(1), (2), (5), and (6).

II.  **LEGAL ARGUMENT**

   A.   **The Court Should Deny Defendants' Motion Under Rule 12(b)(1).**

The Court should deny Defendants' Motion to Dismiss under Rule 12(b)(1) (or, if deemed necessary, permit Plaintiff to amend) because the only alleged deficiency – failing to specify the citizenship of Plaintiff's two LLC members – can be easily cured by amendment.

Plaintiff M-S Fund is a limited liability corporation with only two members:  Silverado Power LLC and Martifer Solar, Inc.  Complaint, ¶4 (Dkt. 1); Declaration of John Cheney, ¶3.

Silverado Power LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business in San Francisco, California.  *Id*., ¶4. Silverado Power LLC's members are individuals, not  partnerships, associations, or other LLCs [*id*.], rendering Defendants' argument concerning the LLC's potential "submembers" moot.

-1-

1 | Martifer Solar, Inc. was a limited liability corporation organized under the laws of the State of California with its principal place of business in San Francisco, California. *Id.*, ¶5.

Defendants concede they are "Chinese corporations with their principal places of business in China," thus establishing complete diversity amongst the parties as neither Plaintiff nor any of the members its LLC are Chinese. Motion, at p. 8 (citing Complaint, ¶¶5-6).

When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). Defendant's own authority highlights the propriety of permitting an amended pleading to establish diversity, as in the *V&M Star, LP* case, the court of appeal remanded to the district court, who had earlier granted defendant's motion for summary judgment, "with instructions to resolve the jurisdictional issue by determining V&M's citizenship." *V&M Star, LP v. Centimark Corp*, 596 F.3d 354, 357 (6th Cir. 2010).

### B. The Court Should Deny Defendants' Motion Under Rule 12(b)(2).

Defendants' personal jurisdiction arguments under Rule 12(b)(2) miss the boat because, unlike the facts in *Ranza*, the Chinese parents in this case have used their subsidiary – Talesun Solar USA Ltd. – to advance their own interests, and the subsidiary operated solely for the parents' benefit. In such cases – especially where fraud is alleged – courts are not reluctant to pierce the corporate veil in order to subject the foreign parents to liability that would otherwise attach only to the subsidiary.

A Chinese drywall manufacturer's failure to heed the basic tenets of corporate law recently showed how far a U.S. court's "long-arm" jurisdiction can reach for those foreign parent corporations who put form over substance for their own profit. *See In Re: Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521 (5th Cir. 2014). In that case, seeking to capitalize on a housing boom following Hurricanes Katrina and Rita which devastated the southeastern United States, Taishan Gypsum Company ("TG") – one of the largest drywall manufacturers in China – manufactured large quantities of gypsum wallboard and sold it to U.S. companies through a newly-formed subsidiary, Tai'an Taishan Plasterboard Company ("TTP").

*Id.*, at pp. 526-27. When homeowners began experiencing problems with TG's drywall, class action lawsuits sprung up against both TG and TTP. *Id.* In some cases, TG moved to dismiss for lack of personal jurisdiction. *Id.* The district court denied those motions, holding in each case that "TTP's contacts with Florida could be imputed to TG for the purposes of personal jurisdiction." *Id.* at 528.

On appeal, the Fifth Circuit affirmed, holding that "[t]he record in this case reflects an intimate relationship between TG and TTP" that they used to "capitalize[] on a spike in demand for drywall in the Gulf South." *Id.* at 550. The Fifth Circuit concluded: "[a]s their dealings demonstrate, TG and TTP availed themselves of Florida and Louisiana – two of the market's focal points. We perceive no statutory or constitutional impediment to their now defending suit there." *Id.* In so holding, the Fifth Circuit reinforced that:

> When "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction."

*Id.* at 530 (*quoting* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed.2002)). The Fifth Circuit also reinforced that Florida's long-arm statute recognized that an agent's contacts with Florida can be imputed to its principal for jurisdictional purposes. Fla. Stat. Ann. § 48.193(1)(a) (emphasis added) ("A person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits ... to the jurisdiction of the courts of this state."); *see also Dev. Corp. of Palm Beach v. WBC Constr., LLC,* 925 So.2d 1156, 1161 (Fla. Dist. Ct. App. 2006) ("While a parent corporation is not subject to jurisdiction in Florida solely because its subsidiary does business here, the control of a parent over a subsidiary may permit the conclusion that the subsidiary is acting as the agent of the parent, thus subjecting the parent to jurisdiction under section 48.193(1) and supporting 'minimum contacts.' " (internal citations omitted)).

In this regard, California law is identical to Florida's. In California, in order to "justify disregard of the corporate entity" for jurisdictional purposes, especially where defendants – as

here – have submitted no evidence whatsoever contradicting the complaint's allegations, a plaintiff need only allege (a) such unity of interest and ownership that in reality no separate entities exist, and (b) failure to disregard the separate entities would result in fraud or injustice. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) (affirming a finding of personal jurisdiction over non-resident parent corporation based on alter ego factors including undercapitalization and transferring assets amongst corporations).

In this case, because Defendants have elected to submit zero evidence whatsoever contradicting Plaintiff's alter ego allegations, the Court is bound to accept those allegations as true on Defendants' Motion to Dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (in considering a motion to dismiss, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff). Thus, in determining whether to exercise personal jurisdiction over the Chinese defendants, the Court must accept as true that:

- both Zhongli Science and Technology Group Co., Ltd. ("Zhongli Group") and Suzhou Talesun Solar Technology Co., Ltd. ("Talesun Solar") conduct business in California through their subsidiary Talesun Solar USA Ltd. ("Talesun USA") [Complaint, ¶¶5-7];

- Talesun USA conducts business in the United States on behalf of, and for the sole benefit of, its parent corporations in China [*id*., ¶8] ("the central purpose of this subsidiary was to distribute solar panels manufactured by its parent companies in China."); *see also id*., ¶28 (alleging that Eric Ma, General Manager for Talesun USA, confirmed that his main responsibility as General Manager was to help Zhongli Group and Talesun Solar "achieve their goals in the USA market," and that at a certain level, Talesun USA could not operate without the approval of its parents' boards of directors);

- At all times, Zhongli Group and Talesun Solar were acting in concert with, and were the agent of, Talesun USA [*id*., ¶9];

- At all times, Baixing Wang served as Chairman for all three defendants [*id*., ¶10];

- On behalf of the Zhongli Group, Mr. Wang traveled to Australia to attend a signing ceremony that preceded the contracts at issue in this case, and personally signed a Memorandum of Understanding with Plaintiff (in his capacity as Talesun Solar's Chairman) [*id*., ¶27];

- During the relevant time period, Frank Qi served as an executive officer of both Talesun Solar (VP) and Talesun USA (CEO) [*id*., ¶11];

- The Chinese parent corporations paid the significant legal bills for Talesun USA's U.S.-based firm who negotiated the agreements at issue [*id.*, ¶13];

- During due diligence, Talesun USA touted its strong financial backing by Zhongli Group and Talesun Solar, relied on financial statements for both of its Chinese parents, promised that Zhongli Group can provide a corporate guaranty for payment, and corresponded on Zhongli Group letterhead [*id.*, ¶¶18-19, 22, 25];

- The Chinese parents paid Plaintiff a $500,000 exclusivity deposit on behalf of Talesun USA [*id.*, ¶20];

- Prior to signing, Talesun USA indicated to Plaintiff that its senior leadership and parent corporation (Zhongli Group) wanted to substitute in Talesun USA as signatory on the contract (rather than another puppet subsidiary) [*id.*, ¶23];

- Zhongli Group purposefully underfunds its U.S. subsidiaries from inception (some receiving as little as $1,000 in initial capital) [*id.*, ¶31];

- Zhongli Group's U.S. subsidiaries are simply instruments of the Chinese parents, operating solely for their benefit (which was exactly the case here with Talesun USA) [*id.*, ¶¶32-33];

- Zhongli Group's and Talesun Solar's parental control over Talesun USA pervaded all dealings in this forum; Talesun USA was merely an agent through which the Chinese parents conducted business in the U.S., and the separate corporate status of these entities was formal only, without any semblance of individual identity [*id.*, ¶34]; and

- A unity of interest and ownership between Zhongli Group, Talesun Solar, and Talesun USA exists such that any individuality and separateness between these entities has ceased [*id.*, ¶35]. They share the same executive leadership and employee and the Chinese parents exercise control and dominion over Talesun USA with a disregard for the separate legal status of this entity and, as a result, attempt to defraud creditors like Plaintiff. *Id.*

These unrefuted alter ego allegations are significantly more compelling evidence of control than that which led both the Fifth Circuit in *Chinese Drywall* and Ninth Circuit in *Flynt* to affirm those district courts' assertion of personal jurisdiction over non-resident parent corporations. Accordingly, the Court should deny Defendants' misguided Motion to Dismiss under Rule 12(b)(2).

**C.     The Court Should Deny Defendants' Motion Under Rule 12(b)(5).**

Plaintiff filed its Complaint on July 24, 2019. *See* Dkt. #1. Twenty-one days later, Defendants moved to dismiss the Complaint for improper service *See* ECF Doc. #12. Federal Rule of Civil Procedure 4(m) provides:

> *Time Limit for Service.* If a defendant is not served <u>within 90 days after the complaint is filed</u>, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m) (emphasis added). Accordingly, the Court must deny Defendants' Motion to Dismiss for improper service because it is premature.

But the Court can just as easily deny Defendants' Motion on the merits because service has, in fact, been effectuated. As reflected in the Amended Proofs of Service filed on August 27, 2019 [*see* Dkt. #'s 20-22], Plaintiff properly served all three defendants in this matter the same day it filed the Complaint.[1] Plaintiff did so by hand-delivering the Summons and Complaint on Changqing Hu during his deposition on July 24, 2019:

```
Q: Well, let me try it this way:  Your lawyer produced some records
   here today.  We're going to hand to you, sir –
```
PROCESS SERVER:  Excuse me.  This is for you.
MS. WEDDELL:  He doesn't speak English.  You can take it.

PROCESS SERVER:  You've been served.

MR. ONGARO:  Thank you.

```
Q: You can open that later, sir.  That's a complaint filed against the
   Chinese companies for fraud, because you've identified yourself as a
   director of those companies.
```

*See* Ongaro Decl., ¶3, Ex. 2 ("Hu. Depo."), at 170:13-24. Given the amended proofs reflecting timely service on Changqing Hu, Hao Sheng's declaration – clarifying only that *he* has never been served – and the arguments emanating therefrom, are immaterial.

---

[1]/ Plaintiff's original proofs of service [*see* Dkt. #'s 8-10] *erroneously* named Hao Sheng as the individual being served, which error Plaintiff has now corrected in its amended proofs which reflect that copies of the Complaint and Summons were hand-delivered on July 24, 2019 to Changqing Hu (<u>not</u> Hao Sheng).

-6-
MPA ISO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 4:19-CV-04243-KAW

Service on Mr. Hu satisfied all of the criteria laid out in Defendants' moving papers as Mr. Hu:

- is a current member of the board of directors for defendant Talesun Solar USA Ltd. [*see* Ongaro Decl., ¶2, Ex. 1; *see also* Hu. Depo. at 126:19-22; 127:2-6; 130:20-25; 169:6-9; 171:17-21];

- is a current member of the board of directors for defendant Suzhou Talesun Solar Technology Co., Ltd. [*id.* at 162:9-18]; and

- is a current vice president (and former member of the board of directors) for defendant Zhongli Science and Technology Group Co., Ltd. [*id.*, at 145:11 – 146:6].

As they must, Defendants concede that pursuant to Federal Rule of Civil Procedure 4(h), service is proper on both a board member and vice president [*see* Motion, at p. 12]; accordingly, service on Mr. Hu effectuated proper service on all three Defendants. Because service of process was sufficient, the Court should deny Defendants' Motion to Dismiss pursuant to Rule 12(b)(5).[2]

### D. The Complaint Adequately Pleads Fraud.

While emptying the kitchen sink, Defendants provide just sixteen words in support of their flimsy Rule 12(b)(6) argument: "The complaint contains conclusory allegations that fail to satisfy Rule 9(b)'s heightened standard of pleadings for fraud." Motion, at p. 11:19-20. To the extent the Court elects to do Defendants' work for them, the Complaint adequately pleads fraud.

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint therefore must provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Twombly*, 550 U.S. at 555. Under Rule 12(b)(6), a court may dismiss a complaint that does not contain enough facts to state a claim to relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

---

[2]/ Defendants erroneously base their "improper service of process" argument on Rule 12(b)(4); the appropriate subsection for this motion is 12(b)(5).

-7-
MPA ISO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 4:19-CV-04243-KAW

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557).

In considering a motion to dismiss, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). "To satisfy Rule 9(b), 'a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994)).

"The elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or nondisclosure ); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.,* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012) (quotation omitted). Plaintiff's Complaint has adequately pled the specifics of Defendants' fraudulent conduct.

More specifically, the Complaint alleges exactly when Defendants made numerous intentional misrepresentations and the specifics of those misrepresentations:

- on November 28, 2012, Talesun Solar USA entered into the MIPA with M-S Fund which included certain representations and warranties at Sections 5.1 and 5.1.8 [Complaint, ¶¶13, 15-16];

- on December 31, 2012, Talesun Solar USA entered into the Standstill Agreement with M-S Fund [*id.*, ¶¶13] after which CEO Frank Qi confirmed that Defendants fully understood and were ready to move forward with project development [*id.*, ¶17];

- throughout contract negotiations, Talesun USA touted its strong financial backing from its Chinese parent corporations, including an August 2012 representation

-8-
MPA ISO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 4:19-CV-04243-KAW

that it "had allocated dedicated resources to the negotiation and implementation" of the solar projects, including "confidence to start the construction of at least 14 MWAC projects in Q4, 2012" [*id.*, ¶18];

- On August 3, 2012, and again on August 27, 2012, Talesun Solar USA represented in separate letters of intent that it "would use its own capital to fund the project acquisition," and "if necessary, [defendant] Zhongli Group can provide a Corporate Guaranty for the payment." [*id.*, ¶¶19-20];

- On November 27, 2012, Mr. Ma informed Plaintiff that "our board approved the deal!" and "we can . . . close some projects for total $1MM right after the signing." [*id.*, ¶24]; and

- On December 31, 2012, Talesun USA's outside counsel forwarded Plaintiff a scan of check #1580, signed by Mr. Ma, for $10,971.416.50 (which check Reed Smith was to hold in escrow as the Closing Payment required under the Standstill Agreement, although at no point in time did Talesun USA ever possess funds sufficient to cover this check) [*id.*, ¶26].

The Complaint summarizes these intentional misrepresentations in Count I (¶¶38), and summarizes key facts which Defendants concealed from Plaintiff in Counts I (¶39) and II (¶46). The Complaint also alleges that Defendants made these representations (and concealed certain facts) with an intent to induce Plaintiff's reliance (¶40, 48), that Defendants knew these representations were false when made (¶42), and that "prior to entering into the Agreements, M-S Fund reviewed and relied on these financials along with Talesun USA's express promises of financial backing from its Chinese parent companies." *See id.*, at ¶¶22, 25 ("M-S Fund reviewed and relied on these financials as an inducement to entering into the Standstill Agreement."); *see also* ¶¶40, 43, 49 (pleading reliance). Finally, the Complaint alleges that Plaintiff suffered damage because it relied on Defendants' misrepresentations/omissions. *See id.*, ¶44, 50, 55.

Fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud (or mistake) . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Fid. Nat. Title Ins. Co. v. Castle,* C 11-00896 SI, 2011 WL 6141310, at *5 (N.D. Cal. Dec. 8, 2011) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Plaintiff's Complaint is not so vague or broad so as to fail to provide Defendants with fair notice of the allegations. Because the Complaint is sufficiently specific to state a claim for fraud, the Court should deny Defendants' Motion under Rule 12(b)(6).

## III. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss in its entirety. To the extent the Court requires additional allegations concerning the citizenship of Plaintiff's submembers, the alter ago relationship between the Chinese parent defendants and their U.S. subsidiary, or fraud, leave to amend is warranted.

Dated: August 28, 2019            **ONGARO PC**

By:    /s/ *David R. Ongaro*
        David Ongaro

Attorneys for Plaintiff
MARTIFER-SILVERADO FUND I, LLC