# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARTIFER-SILVERADO FUND I, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD., ET AL.,**<br><br>Defendants. | CASE NO. 19-cv-04243-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 12 |

Plaintiff Martifer-Silverado Fund I, LLC brings this action against defendants Zhongli Science and Technology Group Co., Ltd. ("Zhongli") and Suzhou Talesun Solar Technology Co., Ltd. ("Suzhou") arising out of an alleged conspiracy orchestrated by Chinese-based parent companies to use their U.S. subsidiary to commit fraud.[1]

Now before the Court is defendants' motion to dismiss. Having carefully considered the pleadings and papers submitted, and for the reasons set forth below, the Court **GRANTS** defendants' motion to dismiss **WITH LEAVE TO AMEND**.[2]

**I.    BACKGROUND**

The complaint alleges as follows:

Plaintiff is a limited liability corporation engaged in the development of a pipeline of utility-scale solar projects. Zhongli is a Chinese corporation with at least nine subsidiaries, including Suzhou, also a Chinese corporation, which oversees Zhongli's operations in the solar

---

[1] The initial complaint also named Talesun Solar USA, Ltd. ("Talesun") as a defendant. On October 17, 2019, plaintiff filed a motion to voluntarily dismiss Talesun pursuant to Rule 41. (Dkt. No. 27). On October 21, 2019, the Court granted the motion. (Dkt. No. 29.)

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for decision without oral argument.

panel industry. Suzhou itself has more than a dozen subsidiaries worldwide, including Taleson Solar USA, Ltd. ("Taleson"), which conducts business in the U.S. on behalf of its parent corporations in China. Taleson's central purpose is to distribute solar panels manufactured by its Chinese parent companies.

In 2012 and 2013, plaintiff and Taleson entered into a series of negotiated agreements concerning the sale and purchase of thirty-six solar project companies. Prior to executing the agreements, Taleson repeatedly represented to plaintiff that it had the financial backing of its Chinese parent companies. In addition, the agreements themselves stated that Taleson had the authority, power, and capital to enter into and perform its obligations under the agreements. Taleson's parent corporations were aware of and expressly approved the commercial terms captured in the agreements.

Taleson ultimately failed to perform its obligations under the agreements. On or about January 24, 2019, Taleson sent plaintiff a declaration from a member of Taleson's board of directors, in which Taleson asserted for the first time that the representative who had entered into the agreements did not have the authority to bind Taleson. Thereafter, a representative from Suzhou testified that Zhongli's U.S. subsidiaries were significantly underfunded.

Plaintiff now brings claims against defendants for fraudulent inducement, fraudulent concealment, negligent misrepresentation, and conspiracy.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate, namely, those involving diversity of citizenship or a federal question, or those to which the United States is a party. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376-77 (2012); *see also Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992) ("Federal courts have no power to consider claims for which they lack subject-matter jurisdiction."), *overruled on other grounds by United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Where a defendant

2

1 brings such a motion, the plaintiff bears the burden of establishing subject matter jurisdiction.

2 *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).

### B. Federal Rule of Civil Procedure 12(b)(2)

A motion brought under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Here, California law applies. California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. As such, for a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

General jurisdiction allows a court to assert jurisdiction over out-of-state corporations "to hear any and all claims against them" and attaches to a defendant only if its "affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State." *Id*. at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). It would be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19.

By contrast, specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). Said another way, personal jurisdiction requires the Court evaluate whether the

3

specific activity giving rise to the plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-46 (1952). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of demonstrating the first two prongs. *Id*. If the plaintiff fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state. *Id*. If the plaintiff carries this burden, then the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Id*.

Where, as here, a motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction. *Schwarzenegger*, 374 F.3d at 800. A plaintiff makes a *prima facie* showing by demonstrating facts that, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint, and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

//
//
//
//

**III. ARGUMENT**

Below, the Court addresses defendants' jurisdictional arguments in favor of dismissal.

### A. Subject Matter Jurisdiction (Rule 12(b)(1))

As a threshold matter, the Court must determine whether it has subject matter jurisdiction over this action. Plaintiff alleges that subject matter jurisdiction exists pursuant to the federal diversity jurisdiction statute, 28 U.S.C. § 1332. "Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008). For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 USC § 1332(c)(1). An LLC's citizenship is determined by the citizenship of its members. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

Plaintiff submits that it is an LLC with two constituent members: Silverado Power, LLC ("Silverado") and Martifer Solar USA ("Martifer"). Silverado and Martifer themselves are LLCs. In its response to the Court's order to show cause regarding subject matter jurisdiction, plaintiff represented that Silverado's three individual members, John Cheney, Hans Isern, and Jim Howell, are citizens of California and Oregon. With respect to Martifer, plaintiff represented that it is a dissolved California entity with its principle place of business in California. Thus, plaintiff represented that "M-S Fund and each of its members, including individuals John Cheney, Hans Isern, and Jim Howell are non-Chinese entities and individuals." Plaintiff alleges that Zhongli and Suzhou are both corporate citizens of China.

Thus, plaintiff, through Silverado's members, is a citizenship of California and Oregon for subject matter jurisdiction purposes, and defendants are citizens of China. Complete diversity exists. The Court therefore finds that it has subject matter jurisdiction over this action.

### B. Personal Jurisdiction (Rule 12(b)(2))

Having found subject matter jurisdiction exists, the Court must consider whether it has personal jurisdiction over China-based Zhongli and Suzhou. Plaintiff does not appear to argue that personal jurisdiction exists due to defendants' own conduct with the forum, but rather, argues

5

that the Court should "pierce the corporate veil" to subject Zhongli and Suzhou to liability that would otherwise attach only to Talesun, their U.S. subsidiary.

In narrow circumstances, federal courts will find that a corporation is the alter ego of another by "'pierc[ing] the corporate veil' and attribut[ing] a subsidiary's [contacts with] the forum state to its parent company for jurisdictional purposes." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (citation omitted). To survive a Rule 12(b)(2) motion on an alter ego theory a plaintiff must make a *prima facie* showing that both: (1) there is a unity of interest and ownership between the corporations such that their separate personalities do not actually exist, and (2) treating the corporations as separate entities would result in injustice. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted). The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (citation omitted). It requires such "pervasive control" that it can only be met where a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* (citation omitted). Courts typically consider nine factors when assessing the first prong of the alter ego test:

> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

*Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.Supp.3d 938, 954 (N.D. Cal. 2015) (quoting *Sandoval v. Ali*, 34 F.Supp.3d 1031, 1040 (N.D. Cal. 2014)).

Here, plaintiff points to several allegations in the complaint that it argues support an alter ego theory. Specifically, the complaint alleges that Zhongli, Suzhou, and Taleson shared a chairman; Suzhou and Taleson shared an executive officer; Suzhou owned 100% of Taleson's equity[3]; Taleson often needed the approval of Zhongli and Suzhou's boards of directors to operate;

---

[3] In their reply brief, defendants contend that neither Zhongli nor Suzhou is a parent corporation of or holds any shares in Talesun. In support of this contention, defendants offer

6

and Zhongli underfunded its U.S. subsidiaries, including Taleson, sometimes providing as little as $1,000 in initial capital. As to the agreements allegedly entered into by plaintiff and defendants, the complaint alleges that Taleson presented plaintiff with financial statements for Zhongli and Suzhou, promising that Zhongli could provide a corporate guaranty for payment; Taleson corresponded with plaintiff using Zhongli letterhead; Zhongli and Suzhou paid legal bills for Taleson's attorneys who negotiated the agreements at issue; and Zhongli and/or Suzhou paid a $500,000 exclusivity deposit pursuant to which plaintiff had to forgo other opportunities.[4]

It is well established that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. In accordance with this principle, this Court previously has held that complete ownership over a subsidiary and the sharing of several employees, officers, directors, and agents were insufficient to satisfy the first prong of the alter ego test, "[o]therwise parent and subsidiary entities would always be presumed alter egos." *GEC US 1 LLC v. Frontier Renewables, LLC*, No. 16-CV-1276 YGR, 2016 WL 4677585, at *14 (N.D. Cal. Sept. 7, 2016). Likewise, here, allegations that Taleson was wholly-owned by Suzhou and shared two executives with its parent companies are insufficient to show an alter ego relationship. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003) (finding that 100% control of a subsidiary by a parent "does not by itself make a subsidiary the alter ego of the parent").

Further, the first prong of the alter ego test is not satisfied simply because "an active parent corporation [is] involved directly in decision-making about its subsidiaries' holdings," where the corporations "observe all of the corporate formalities necessary to maintain corporate separateness." *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001), abrogated on other

---

minutes from a Talesun board meeting, which states that 5,000 shares of Talsun's stock shall be issued to "Talesun Solar Switzerland AG." This evidence is unpersuasive because the issuance of stock does not preclude a parent-subsidiary relationship between defendants and Talesun, and moreover, the Court lacks any information about Talesun Solar Switzerland AG. However, as explained herein, the Court finds that plaintiff fails to support its alter ego theory even taking as true the allegation of a parent-subsidiary relationship.

[4] Defendants counter that neither Zhongli nor Suzhou paid the exclusivity deposit on behalf of Talesun.

7

grounds by *Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017). As such, plaintiff's allegations that Zhongli and Suzhou were heavily involved in Taleson's operations, including by providing financial backing and using Taleson to achieve business objectives in the U.S., do not by themselves support a finding of alter ego status. Indeed, there is nothing inherently improper about Taleson conducting business in the U.S. for defendants' benefit or representing in contract negotiations that defendants were corporate guarantors. *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015) ("[T]he fact that a parent corporation reports the financial results of its subsidiaries in the parent's financial statements is not proof of an alter ego relationship, even in situations where additional unity of interest and ownership factors are alleged."). And while plaintiff alleges that defendants and Taleson disregarded corporate formalities,[5] these allegations are conclusory.

In addition, the Court considers plaintiff's allegation that Taleson was underfunded. "Under California law, inadequate capitalization of a subsidiary may alone be a basis for holding a parent corporation liable for acts of the subsidiary." *Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993). However, when determining whether inadequate capitalization exists such that alter ego liability would be appropriate, courts typically look to facts or allegations related to an entity's liabilities and assets. *NetApp, Inc.*, 2015 WL 400251, at *7 (citing cases). For example, in *Slottow*, the court found inadequate capitalization where an entity's "initial capitalization" was $500,000, which was "woefully inadequate" relative to the entity's liabilities of at least $5 million. *Slottow*, 10 F.3d at 1360. Here, plaintiff makes the conclusory allegation that Zhongli underfunded its U.S. subsidiaries. Plaintiff also alleges that these subsidiaries sometimes received as little as $1,000 in initial funding, however, there are no specific allegations about Taleson's assets and liabilities. Thus, plaintiff's allegations of undercapitalization are insufficient to satisfy the first prong of the alter ego test. *NetApp, Inc.*,

---

[5] For example, plaintiff alleges that Zhongli and Suzhou conduct business in the U.S. through Talesun; that Zhongli and Suzhou "act[] in concert with, and were the agent[s] of," Talesun; and that Talesun's "central purpose" "was to distribute solar panels manufactured by its parent companies in China. Such conclusory allegations do not support an alter ego finding.

8

2015 WL 400251, at *7 (finding no alter ego relationship where plaintiff failed to explain "why its factual allegations would suggest undercapitalization" and instead offered "mere speculation that [was] insufficient to defeat a motion to dismiss"); *Bui v. Golden Biotechnology Corp.*, No. 5:13-CV-04939-EJD, 2014 WL 4072112, at *3 (N.D. Cal. Aug. 14, 2014) ("[A]lthough Plaintiff alleges that GBC New Jersey is undercapitalized, Plaintiff has provided no support for the proposition. . . . While a district court draws all reasonable inferences in favor of the plaintiff when determining a motion to dismiss, the court need not assume mere conclusory allegations to be true.").

The Ninth Circuit's decision in *Unocal* is instructive. There, the court found that plaintiff failed to make a sufficient showing of an alter ego exception, even when the plaintiff alleged that (i) the parent was involved in its subsidiaries' divestments and capital expenditures, (ii) the parent formulated general business policies and strategies of its subsidiaries, (iii) the parent provided loans and financing to its subsidiaries, (iv) the parent maintained overlapping directors and officers with its subsidiaries, and that (v) the subsidiaries were undercapitalized. 248 F.3d at 928. Despite the "wealth" of evidence presented by the plaintiff, the Ninth Circuit found that there was not "such a unity of interest and ownership between [the parent] and its subsidiaries that their separate corporate personalities no longer exist." *Id*. The same is true here. That is, even taking the allegations as true and considering the evidence, plaintiff has not demonstrated a unity of interest between defendants and Taleson to the extent necessary to set aside the principle of corporate separateness.[6]

In sum, this does not appear to be one of the narrow circumstances warrant this Court piercing the corporate veil to attribute Taleson's contacts with this forum to defendants for

---

[6] Plaintiff's reliance on *In Re ChineseManufactured Drywall Products Liability Litigation*, 753 F.3d 521 (5th Cir. 2014) fails to persuade. With respect to its alter ego analysis, the Fifth Circuit applied Louisiana law and a different set of factors than are set forth herein under Ninth Circuit precedent. *Id*. at 546. The court's discussion of Florida law concerned the plaintiff's agency theory, which is different from an alter ego theory, *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003), and therefore inapplicable here. Further, the *ChineseManufactured* court based its alter ego finding on record evidence that the parent and subsidiary appeared to be identical companies. 753 F.3d at 547. Plaintiff's allegations in this case do not rise to the same level.

9

1  jurisdictional purposes. Accordingly, this Court lacks personal jurisdiction over defendants.

2  Because amendment would not futile, however, the Court grants plaintiff leave to amend.[7]

**IV. CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **GRANTED WITH LEAVE TO AMEND**. Any amended complaint must be filed within **twenty-one (21) days** of issuance of this Order, and any response thereto is due **fourteen (14) days** after plaintiffs' filing. No new claims or parties may be added without leave of court or stipulation of the defendants. Further, defendants may not bring any new arguments that could have been raised in this motion.

This Order terminates Docket Number 12.

**IT IS SO ORDERED.**

Dated: March 20, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[7] Defendants also move to dismiss the complaint for incomplete service under Rule 12(b)(4) and failure to state a claim under 12(b)(6) and 9(b). Because defendants are not subject to the personal jurisdiction of the Court, however, the Court need not reach these issues.