1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**MARTIFER-SILVERADO FUND I, LLC,**

        Plaintiff,

    vs.

**ZHONGLI SCIENCE AND TECHNOLOGY
GROUP CO., LTD., ET AL.,**

        Defendants.

CASE NO.  19-cv-04243-YGR

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. Nos. 35, 38

      This is the second round of briefing on the complaint filed by plaintiff Martifer-Silverado Fund I, LLC.  In its prior order, the Court found that it lacked personal jurisdiction over defendants Zhongli Science and Technology Group Co., Ltd. ("Zhongli") and Suzhou Talesun Solar Technology Co., Ltd. ("Talesun Solar").  Now before the Court is defendants' motion to dismiss the first amended complaint ("FAC") for lack of personal jurisdiction, failure to properly serve, failure to join an indispensable party, and failure to satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  Having carefully considered the pleadings, papers, and evidence submitted, and for the reasons set forth below, the Court **DENIES** the motion.[1]

## I. PERSONAL JURISDICTION

      In its prior order, the Court construed plaintiff's jurisdictional argument as one based on an alter ego theory, rather than a claim that personal jurisdiction existed based on defendants' own contacts with the forum.  In this round of briefing, plaintiff primarily argues that the Court should

---

[1] Plaintiff has filed an administrative motion to exceed the page limit for its opposition. While plaintiff's reasons for filing a 29-page opposition are not compelling, the Court finds it appropriate to consider the full brief for purposes of deciding the motion on the merits.  As such, the administrative motion is **GRANTED**.  Additionally, defendants object to certain of the evidence proffered by plaintiff.  To the extent the Court relied on the Isern and Howell declarations, or the exhibits thereto, the Court finds (i) any hearsay objections are overruled because the evidence was not offered for the truth of the matter asserted; and (ii) any authentication or personal knowledge objections also are overruled because the declarants have provided sufficient testimony to show, for purposes of this motion, that they have personal knowledge of the matters addressed and that the exhibits are what the declarants claim them to be.  The other evidence to which defendants object are unnecessary to the Court's resolution of the questions at issue.  Thus, defendants' objections are **DENIED.**

United States District Court
Northern District of California

1  exercise specific jurisdiction over defendants, and only in the alternative, that the Court may

2  exercise jurisdiction over defendants as alter egos of their subsidiary.  The Court thus begins by

3  considering the first of these two arguments.

4         For a non-resident defendant to be subject to the jurisdiction of the court, it must have

5  certain minimum contacts with the forum such that the maintenance of the suit does not offend

6  traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington,* 326 U.S. 310,

7  316 (1945).  The Ninth Circuit applies a three-prong test to determine whether a non-resident

8  defendant's activities are sufficiently related to the forum state to establish specific personal

9  jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform
> some act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,
> *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v.

Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

       Plaintiff asserts three facts showing defendants' direct contacts with the forum.  First,

plaintiff alleges that defendants "established their subsidiary in California for the purpose of

marketing and selling Talesun Solar's Chinese-manufactured solar panels in California."

Although corporate documents suggest another entity, Talesun Solar Switzerland AG, directly

owns Talesun USA, Talesun USA's former general manager and designated "person most

knowledgeable" both testified that defendants were above Talesun USA in the corporate structure.

Additionally, plaintiff alleges that Talesun USA was the exclusive importer of Talesun Solar's

solar panels into the United States and handled all marketing, advertising, distribution, and sales

logistics relating to the panels, a claim which defendants do not appear to dispute in their briefing.

Moreover, as discussed in more detail below, the manner in which defendants allegedly used their

subsidiary to execute the deal at issue in this case indicates additional, albeit less direct, contacts

with the forum.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Second, plaintiff alleges that defendants "wired all payments to [p]laintiff, in California, under the [Membership Interest Purchase Agreement]." While defendants point out that there is no evidence that the payments came from defendants, as opposed to other related entities, defendants do not put forth any evidence contradicting the allegations—evidence which presumably would be in their possession if it existed and had not been destroyed. Additionally, regardless of which account wired payments, the Court notes that plaintiff has proffered evidence suggesting that Talesun USA relied on defendants' financial resources to execute the deal. Specifically, Talesun USA represented on various occasions that it would "need to apply for [] fund[s] from HQ" and had "checked with HQ regarding the deposit." Talesun USA was called the "front face" for the projects, while Zhongli provided "the financial backing" and guaranteed Talesun USA's obligations under the relevant agreements. Additionally, evidence suggests defendants provided Talesun USA with instructions as to when to issue the required letter of credit and fund the required purchase price.

Third, plaintiff alleges that defendants "supplied their own financials and due diligence materials to California's power companies to induce them to permit title of the project companies to transfer to Talesun USA." Defendants counter that they provided their financials to plaintiff at plaintiff's request, and moreover, it was plaintiff that created an organizational chart for the California power companies purporting to show defendants as buyers of the solar project companies. Even if this is true, however, plaintiff allegedly requested defendants' financials because Talesun USA had no meaningful financials to provide, and thus, the state utilities "insisted upon reviewing" defendants' materials. That the materials were transmitted through plaintiff matters less than the fact that the parties represented to California's power companies that defendants were the financial backers and ultimate owners of the projects.

In addition to identifying defendants' direct contacts with the forum, plaintiff makes numerous allegations regarding defendants' involvement at every stage of the solar project deal, which plaintiff avers help establish "purposeful availment." Plaintiff proffers evidence that defendants paid to fly plaintiff's representative from California to Australia for a signing ceremony; defendants' chairman, Baixing Wang, attended the signing ceremony and executed a

3

memorandum of understanding on behalf of Talesun Solar; Wang later touted to Chinese government officials the success the California-based solar projects would bring to defendants; and defendants issued a press release promoting their agreement to purchase "overseas PV power plant construction" projects from plaintiff.  Plaintiff further alleges that defendants controlled contract negotiations, as evidenced by Talesun USA's lawyers needing to seek approval from defendants to make commitments, defendants engaging their own counsel to oversee the process, and defendants agreeing to move the project closing forward once they "fully understood" and were "ready."

Defendants' principal response is that defendants did not enter into or perform any contracts in California, negotiate with plaintiff in California, or travel to California, and further, defendants' contacts with plaintiff, who resides in the forum, does not support a finding of specific jurisdiction.  These arguments fail to persuade.  As explained, defendants themselves have had some direct contacts with the forum.  Moreover, California courts repeatedly have recognized that a non-resident defendant may establish "purposeful availment" by showing "some manner of deliberately directing [a] subsidiary's activities in, or having a substantial connection with, the forum state."  *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App. 4th 1160, 1169 (2009); *Anglo Irish Bank Corp.*, *PLC v. Superior Court*, 165 Cal. App. 4th 969, 974, 981 (2008) ("We further conclude that activities that are undertaken on behalf of a defendant may be attributed to the defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities at the forum state, regardless of the specific requirements of alter ego or agency[.]"); *Empire Steel Corp. v. Superior Court*, 56 Cal.2d 823, 831 (1961) (specific personal jurisdiction over a foreign parent corporation was established based on the parent's control of its California subsidiary to the detriment of the subsidiary's creditors).[2]  That is precisely what is alleged here, and for purposes of the jurisdictional question alone, there is significant evidence to support this

---

[2] These authorities are quoted extensively in plaintiff's opposition.  Defendants do not attempt to distinguish or recharacterize them on reply.

1   allegation.  As such, plaintiff has carried its burden of showing that defendants purposefully

2   availed themselves of the privilege of conducting activities in the forum.[3]

3       The Court also finds the remaining two factors for specific jurisdiction satisfied.  The fraud

4   and conspiracy claims alleged in the FAC arise out of defendants' alleged forum-related activities,

5   that is, but for defendants' alleged efforts to purchase the solar project companies, plaintiff would

6   not have suffered the injury alleged.  Additionally, defendants have not established that exercising

7   jurisdiction over them would be unreasonable.  This jurisdiction has a manifest interest in

8   providing a forum for residents allegedly injured by the fraudulent acts of a foreign corporation,

9   effectuated through a California subsidiary and relating to investments in the state.

10      The Court finds that it has specific personal jurisdiction over defendants, and thus, it need

11  not consider plaintiff's alter ego theory.  The motion to dismiss on personal jurisdiction grounds is

12  denied.

## II.    SERVICE OF PROCESS

14      Federal Rule of Civil Procedure 4(h) provides that a corporation may be properly served

15  either in the manner prescribed by Rule 4(e)(1) for serving an individual, or by delivering a copy

16  of the summons and complaint "to an officer, a managing or general agent, or any other agent

17  authorized by appointment or by law to receive service of process[.]"  Rule 4(e)(1) refers to state

18  law, which provides that service on a corporation is effective if the papers are delivered "to the

19  president, chief executive officer, or other head of the corporation, a vice president, a secretary or

20  assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a

21  general manager, or a person authorized by the corporation to receive service of process."  Cal.

22  Code Civ. P. § 416.10.  Service of process also may be upheld where made upon an individual "so

23  integrated with the organization that he will know what to do with the papers" or "who stands in

24  such a position as to render it fair, reasonable[,] and just to imply the authority on his part to

25

26      [3] The Court also notes its concern regarding allegations that defendants wound down
    Talesun USA and destroyed documents and communications relevant to this dispute after being
27  threatened with litigation in this state.  While the Court will not speculate on the contents of any
    evidence that may have been destroyed, the specter of the allegations undermines defendants'
28  attempts to shift responsibility for the solar projects deal to Talesun USA.

United States District Court
Northern District of California

1   receive service." *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.* 840 F.2d

2   685, 688 (9th Cir. 1988).

3   Here, plaintiff personally served Changquing Hu during his deposition.  At the time of

4   service, Hu confirmed his role as a vice president for Zhongli, a position enumerated in California

5   Code of Civil Procedure section 416.10.  Defendants contend that this title is "purely honorary,"

6   as Hu was not appointed by the board and held no senior level position under Chinese law.

7   However, the Court is not aware of any limitation on proper service where a position is

8   unappointed or inadequate under foreign law.  Further, plaintiff proffers a copy of Zhongli's

9   Financial Due Diligence Report from 2015, which lists Hu as a former accountant, financial

10  officer, vice president of finance, financial manager, and assistant general manager of Zhongli;

11  and a current member of the board, secretary of the board, and chief financial officer of Zhongli.

12  The last of these titles is explicitly referenced in Rule 4(e)(1).  Given the number and type of

13  positions Hu has held with Zhongli, the Court finds it was fair, reasonable, and just to conclude

14  that he possessed the authority to receive service.

15  As such, defendants' motion to dismiss for failure to properly serve is denied.

16  **III.   FAILURE TO JOIN AN INDISPENSABLE PARTY**

17  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a

18  party under Rule 19 should be granted if an absent party is "necessary" to the suit and that party

19  cannot be joined such that "in 'equity and good conscience' the suit should be dismissed."

20  *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (citations omitted).  The moving

21  party bears the burden of persuasion in arguing for dismissal.  *Clinton v. Babbit*, 180 F.3d 1081,

22  1088 (9th Cir. 1999).

23  Defendants argue that Talesun USA is a necessary party because defendants allegedly

24  made misrepresentations and intentional omissions through Talesun USA.  Although, as

25  discussed, the complaint alleges that Talesun USA served as a conduit for some of defendants'

26  actions, the Court is not persuaded that Talesun USA's joinder is "necessary" to this suit.  As an

27  initial matter, this case sounds in tort, not contract.  "It has long been the rule that it is not

28  necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v.*

United States District Court
Northern District of California

*Synthes Corp. Ltd.*, 498 U.S. 5, 7 (1990).  Additionally, Talesun USA's absence would not result in prejudice to its interests or the Court according incomplete relief to the existing parties. Plaintiff alleges that Talesun USA was nothing more than a "front face" for defendants, who intentionally hid behind their subsidiary and directed that subsidiary's conduct with respect to this case.  Defendants apparently wound up Talesun USA's business operations and terminated its employees in or around 2014.  To the extent Talesun USA has an interest in this case, defendants offer no compelling reason why their defense of this action would not adequately protect that interest.[4]  Further, even if the Court was persuaded that Talesun USA is "necessary" to this action and its joinder is not feasible, Talesun USA is not indispensable such that principles of equity would require dismissal of this entire action.

As such, defendants' motion to dismiss for failure to join an indispensable party is denied.

## IV.   FEDERAL RULE OF CIVIL PROCEDURE 9(B)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Rule 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Defendants aver that the FAC fails to satisfy Rule 9(b) because it "lumps the defendants together" and is silent as to what was false or misleading about defendants' alleged misrepresentations.

Under Rule 9(b), a plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in a fraud.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Accordingly, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme'."  *Id*. at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).  Here, while plaintiff attributes some conduct to "the Parents" collectively, the FAC contains numerous allegations regarding the role each defendant played in the scheme to induce plaintiff to enter into

---

[4] The Court also notes that there is some evidence that defendants are driving the defense of a related state court action filed against Talesun USA and its replacement subsidiary.  For example, plaintiff proffers that Talesun USA has not sent any representatives to attend its own trial and defendants have paid for the subsidiaries' defense.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   agreements even though defendants could not fulfill their obligations thereunder.  As to Zhongli,

2   the FAC alleges that Talesun USA used Zhongli letterhead to represent that it had the resources to

3   implement the deal; shared Zhongli's revenues with plaintiff; touted its "strong financial

4   capabilities," backed by Zhongli as "insurer for the payment"; and represented to plaintiff, which

5   communicated to SoCal Edison, that Zhongli would own the project companies.  With respect to

6   Talesun Solar, the FAC alleges that Talesun USA was the exclusive importer of Talesun Solar's

7   solar panels into the United States; Talesun Solar made arrangements for plaintiff's representative

8   to attend a signing ceremony; the memorandum of understanding was signed on behalf of Talesun

9   Solar; and Talesun USA provided plaintiff with financials for Talesun Solar as evidence that

10  Talesun USA could satisfy the "parent guaranty" component of the agreement.  In sum, the FAC

11  provides defendants with adequate notice of the allegations against each of them.

12          Likewise, the FAC contains sufficient allegations regarding what was false or misleading

13  about defendants' alleged representations.  Plaintiff alleges, for example, that Talesun USA

14  claimed to have financial backing from defendants, when in fact, it did not receive the support

15  needed for Talesun USA to perform its obligations under the agreements.  Similarly, plaintiff

16  alleges that the former general manager of Talesun USA represented that he had authority to enter

17  into the agreements at issue, which he did not.  These allegations identify with sufficient

18  particularity the nature of the alleged misrepresentations.

19          Thus, defendants' motion to dismiss for failure to satisfy Rule 9(b) is denied.

20  **V.      CONCLUSION**

21          For the foregoing reasons, defendants' motion to dismiss is **DENIED**.  Defendants shall

22  respond to the amended complaint within **twenty-one (21) days** of this order.  Further, a case

23  management conference shall be set for **Monday, October 19, 2020** at **2:00 p.m.**  A link to the

24  Zoom platform will be posted in advance of the conference.

25          This Order terminates Docket Numbers 35 and 38.

26          **IT IS SO ORDERED.**

27  Dated:  September 11, 2020                              _____

28                                                          **YVONNE GONZALEZ ROGERS**
                                                            **UNITED STATES DISTRICT COURT JUDGE**

8