```
                                            Pages 1 - 13

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

MARTIFER-SILVERADO FUND I,   )
LLC,                         )
                             )
          Plaintiff,         )
                             )
  VS.                        )     NO. CV 19-04243-YGR
                             )
ZHONGLI SCIENCE AND TECHNOLOGY )
GROUP CO., LTD., ET AL.,     )
                             )
          Defendants.        )
                             )

                         Oakland, California
                         Tuesday, November 17, 2020
```

**TRANSCRIPT OF PROCEEDINGS HELD VIA ZOOM**

**APPEARANCES**:

For Plaintiff:
                    ONGARO PC
                    1604 Union Street
                    San Francisco, CA 94123
            BY:   **DAVID R. ONGARO, ESQUIRE**


For Defendants:
                    MCMANIS FAULKNER
                    50 West San Fernando Street, 10th Floor
                    San Jose, CA 95113
            BY:   **ELIZABETH M. PIPKIN, ESQUIRE**
                  **HILARY L. WEDDELL, ESQUIRE**
                  **PATRICK M. HAMMON, ESQUIRE**
                  **MARWA ELZANKALY, ESQUIRE**


Reported By:     Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                 Official Reporter

| | |
|---|---|
| 1 | **Tuesday - November 17, 2020**                                          **2:34 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** Calling Civil Action 19-4243, |
| 5 | Martifer-Silverado Fund I, LLC vs. Zhongli Science and |
| 6 | Technology Group. |
| 7 | Counsel, please state your appearance. |
| 8 | **MR. ONGARO:** David Ongaro for M-S Fund. |
| 9 | **MS. PIPKIN:** Good afternoon.  Elizabeth Pipkin from |
| 10 | McMannis Faulkner on behalf of Defendants, and I have with me, |
| 11 | socially distanced and wearing face coverings, my colleagues |
| 12 | Patrick Hammon, Hilary Weddell, and Marwa Elzankaly. |
| 13 | **THE COURT:** Good afternoon, everyone. |
| 14 | We're here on a motion to stay.  I can tell that you it is |
| 15 | my inclination here to deny the motion. |
| 16 | Let's go through the various theories that the motion is |
| 17 | brought upon.  The first is claim splitting.  Here under *Adams* |
| 18 | *vs. California Department of Health Services*, 487 F.3d 684 at |
| 19 | 688 to 89, Ninth Circuit case, 2007, the claim splitting |
| 20 | doctrine does not apply where plaintiff's actions are not |
| 21 | pending in the same court.  So there might be another reason |
| 22 | for doing it, but here I've got a claim in federal court, state |
| 23 | court, and in arbitration, and there's a lot of case law with |
| 24 | respect to that theory, and it just -- it doesn't apply.  So |
| 25 | that theory doesn't apply. |

1          The next in terms of *Colorado River*, with respect to
2    *Colorado River*, there are numerous factors to consider, which
3    we will go through, but in general, to the extent that there is
4    any, say, balances in favor of not granting a stay under
5    *Colorado River* but jurisdiction over the res, we don't have res
6    in this case so that's neutral.  Inconvenience of the federal
7    forum, there is no indication that the federal forum is any
8    more or less convenient than the state court, which is right
9    across -- it's in San Francisco, so that's not a factor which
10   weighs in favor of stay.
11         The one issue that I think cuts across and which we will
12   get to is really here would this somehow result in piecemeal
13   litigation.  That's the big issue.  The rule of decision, the
14   order in which jurisdiction was obtained, forum shopping, none
15   of those things are really at issue in this particular matter.
16         Let's talk about what the real focus is in my view,
17   because then the last theory is the inherent power to stay.  I
18   know I have that inherent power.  Sometimes I stay cases;
19   sometimes I don't.  It all really depends on the overlap
20   between the various actions.
21         So here this case in federal court is a fraud case.  It's
22   not a contract case.  And fraud elements are going to be
23   different than the contract elements.  The one question I will
24   have for you, Mr. Ongaro -- I don't know if I said that
25   right -- but the big question is remedies for me.  We will not,

1    if you litigate this case in front of me -- we will not be
2    getting into all the breach of contract issues that are being
3    litigated somewhere else because they're not really relevant,
4    at least not according to your pleading.  What's relevant is
5    were you -- was your client induced to enter into these
6    contracts at all, and effectively, you know, that's it.  So
7    that's where it stops.
8            **MR. ONGARO:**  On that point, Your Honor, we are
9    certainly not going to be seeking any contractual remedies in
10   your case.  That is reserved for the state court case.
11           **THE COURT:**  What is the damage?  That's the question I
12   have.  What is your damage then if not the contractual damages?
13           **MR. ONGARO:**  Well, the contractual damages are
14   confined to consequential damages.  Here in your case, we are
15   going to be seeking damages for the loss of profits and the
16   underlying fraud, so it's going to be a completely different
17   remedy than what we're seeking in the state court, which we
18   won't be able to seek in the state court because the contract
19   doesn't allow.
20           **THE COURT:**  Okay.  So what are you going to tell the
21   jury with respect to the -- loss of profits I understand, but
22   then you said what?  Underlying fraud?
23           **MR. ONGARO:**  Well, yeah.  We're going to be -- the
24   profits -- we're certainly not able to recover the profits in
25   the state court, and so we're going to be able to show that

1  ultimately what happened is we had to get rid of these
2  properties, and the people that we sold it to were able to turn
3  around and sell them for an enormous profit just because we
4  were in financial straits and had to sell at a fire sale.  So
5  the damages for the fraud are going to be that difference.  And
6  we can't make that claim in state court and will not be able to
7  make it and will not make it in state court, so that's going to
8  be the difference.  And so the damages in your case are going
9  to be completely separate than the damages in the state court
10 case.
11        **THE COURT:**  All right.
12     Ms. Pipkin.
13        **MS. PIPKIN:**  Thank you, Your Honor.  And I appreciate
14 your taking a close look at this.
15     What I just heard Mr. Ongaro say is that there are limits
16 in the damages that can be claimed in the state court case, and
17 what I think is clear from his statement that he made just now
18 is that what he is trying to do with this case is to get around
19 those damages limits that are there in the state court case.
20     As far as the two cases and the facts that underlie both
21 cases, the similarities are extensive.  I prepared a --
22        **THE COURT:**  How is the formation of the contract
23 relevant to an enforcement action of the contract?
24        **MS. PIPKIN:**  Well --
25        **THE COURT:**  They're not challenging the contract and

1  they're not seeking rescission.  If they were, then my analysis
2  would be different, but they're not.
3  **MS. PIPKIN:**  Sure, Your Honor.  If it is determined in
4  this case that there was fraud such that there is -- there was
5  no contract, that basically there was not --
6  **THE COURT:**  Fraud in the inducement, does it
7  necessarily -- do you have authority for the proposition that a
8  successful claim for fraud in the inducement negates and
9  rescinds a contract?  I didn't see any authority for that
10 proposition.
11 **MS. PIPKIN:**  Sure, Your Honor.  We did not cite
12 authority for that.  My point is that these --
13 **THE COURT:**  Without that, your arguments fail.  That's
14 the point, and that's why I tried to get into the nitty-gritty
15 of this case.
16     I'm not interested in litigating a case here that is being
17 litigated somewhere else.  I've thrown out cases left and right
18 or stayed them.  I have zero interest in that.  So unless there
19 is authority for the proposition that a successful fraudulent
20 inducement case negates the underlying contract, then it's an
21 entirely separate issue.
22     Now, there is overlap, but that's not uncommon, and
23 certainly I don't want to stay it because then I'd have to wait
24 two or three years for a decision that effectively has no
25 impact on this case.

1          **MS. PIPKIN:**  I understood your -- I understand your
2     concern, Your Honor.  One of the -- and I would ask for the
3     opportunity to brief -- and I apologize that we did not include
4     authority to that effect, but I would ask for at least the
5     opportunity to provide the Court that authority.  We could even
6     provide it within 24 hours if Your Honor would allow us the
7     opportunity.
8          I will also say, though, that Talesun -- the defendant in
9     the state court case, Talesun Solar USA, Limited, one of --
10    that entity has many contentions about why the Master
11    Membership Interest Purchase Agreement was not a valid and
12    enforceable contract, including the lack of authority by
13    Mr. Ma, including the fact that people weren't necessarily told
14    what was required based on the plaintiff's theory, and so if
15    the court in the state court action, for example, determines
16    that the case is barred by statute of limitations or that the
17    case is barred because there was not an enforceable agreement,
18    there is no inducement because there wasn't an agreement in the
19    first place.
20         So in our view, there are issues that would potentially
21    bear on this Court's case, and the bottom line is we are going
22    to have two courts, one in San Francisco and one where
23    Your Honor is sitting, looking at the same issues.  That fraud
24    in the inducement is one aspect of it, and damages is certainly
25    a huge aspect of it, but --

1    **THE COURT:** Issues of statute of limitations don't get
2  you there.
3       What about this issue, Mr. Ongaro, about the court
4  effectively rescinding the agreement?
5       **MR. ONGARO:** Well --
6       **THE COURT:** If there is no -- well, I guess the
7  argument, Ms. Pipkin, is then that's the point.
8       **MR. ONGARO:** Right.
9       **THE COURT:** That actually proves the fraudulent
10 inducement.
11      **MR. ONGARO:** Right.
12      **THE COURT:** If the Court says he didn't have
13 authority, then that's almost an admission in terms of -- well,
14 maybe it wouldn't be as far as an admission, but it doesn't --
15 it doesn't negate that he signed it.  It doesn't negate that
16 someone represented to the Plaintiff here that he had authority
17 to sign it and that -- and that that representation was in fact
18 false.  That's separate.
19      **MS. PIPKIN:** Well, and it also -- two points to that,
20 Your Honor -- and these are really good questions.
21      One, it doesn't mean that the parents induced the entry of
22 the contract, but secondly, the -- the facts -- what the
23 Plaintiff knew about whether Mr. Ma had authority or not is
24 going to be the subject of litigation in the state court action
25 because if you look at the email correspondence -- and I'm not

1  here to win or lose the merits of the case, but if you look at
2  the email correspondence between the parties, much of which is
3  referenced in the Complaint in this case and which is on the
4  Plaintiff's exhibit list in the state court case, it's our view
5  that the Plaintiff knew that Mr. Ma didn't have authority, that
6  people in China weren't really told what was going on here.
7  Plaintiff has internal emails expressing concerns about
8  Mr. Ma's authority to enter into the agreement.
9       So if the court -- if the state court determines that
10 Mr. Ma didn't have authority, it may just be that this Court
11 may determine well, but the Plaintiff knew he didn't have
12 authority or should have known he had authority and therefore
13 can't make a claim for that.
14      And also what Plaintiffs knew will bear on reasonable
15 reliance.  Did they reasonably rely on these statements?
16         **THE COURT:**  But reasonable reliance is an issue in
17 fraudulent inducement; it's not an issue in breach of contract.
18         **MS. PIPKIN:**  Right.  And that's -- that's my point,
19 Your Honor, is that in the state court case, if Mr. Ma -- if
20 there are findings about whether Mr. Ma had authority and what
21 the Plaintiffs knew about this at the time and therefore
22 whether or not there was actually a contract, that may have
23 bearing on what the Court can do or not do related to the
24 issues of reasonable reliance.
25         **THE COURT:**  Well, that's a fact question for a jury.

1  That's not a court question.
2          **MS. PIPKIN:** Understood, Your Honor. For the jury.
3  Thank you. But for the findings made by the finder-of-fact.
4          **THE COURT:** All right. A response.
5          **MR. ONGARO:** Yeah. I think we're kind of talking in a
6  vacuum. What the evidence will be, what the evidence has
7  already established is Mr. Ma -- there was an officer
8  certificate that Mr. Ma had the authority. Mr. Ma told us and
9  testified under oath he had the authority. And in the
10 contract, they represented he had the authority.
11         So clearly I don't think it's going to be an issue in the
12 state court case whether or not there was a contract. Mr. Ma
13 admits there was a contract. He admits there was a breach, and
14 he doesn't know why.
15         And so the problem that the Defendants have is these are
16 really two very separate cases with very separate damages and
17 even separate parties. I mean, in the state court case, we are
18 suing Talesun USA. In your case, Your Honor, we are suing
19 Zhongli and Suzhou, which are different entities all in all.
20 They contend USA was a viable entity up and running and stands
21 on its own two feet, and if that's the case, then it even makes
22 these cases further separated than the Defendants are claiming
23 in their papers.
24         **MS. PIPKIN:** Your Honor, I -- and I know Your Honor
25 has questions and has looked at this carefully so I don't want

1  to add beyond what we've already briefed.  I did put together a
2  very brief PowerPoint that goes over some of the overlap
3  between the two cases.
4          **THE COURT:**  I took at look at it, Ms. Pipkin, and my
5  analysis is much more significant than your PowerPoint.  It's
6  fine.  You know, I did take a look at it.  I would not have
7  looked at it had you not sent it to opposing counsel.  And I
8  appreciate you sending that out in advance.  But I'm one of
9  those judges that goes back and forth and don't give people the
10 floor for an extended period of time.
11         **MS. PIPKIN:**  You're in charge, Your Honor.  Please.  I
12 will do what will help the Court.
13     M-S Fund is not going -- we do not think the Court should
14 allow M-S Fund to re-litigate factual issues that were decided
15 in the state court.  This case has a lot of moving parts --
16         **THE COURT:**  There are doctrines that don't allow
17 parties to effectively commit fraud on the courts, so if you
18 have deposition testimony from the state court action, they are
19 going to be bound by that testimony in this action.  And there
20 may be some economies in terms of certain things that would
21 need to be done, but I fundamentally believe that these things
22 are separate enough that they can proceed.  And certainly if
23 you ever find that they are taking inconsistent positions, you
24 let me know, because I do take a look at that.  And, you know,
25 frankly, I'll call it on -- I'll call it on lawyers before

1   lawyers call it on lawyers at times.  So I don't tolerate that.
2       The fundamental question in front of me really relates to
3   the elements of the different claims.
4       And it will be good to have you litigating in front of me,
5   Ms. Pipkin.  The motion is denied.
6           **MS. PIPKIN:**  Okay.  Well, I enjoyed the opportunity to
7   be in front of you, Your Honor.
8           **THE COURT:**  I was going to do your Case Management
9   Conference today, but I think it's probably better to allow the
10  two of you to meet and confer, and then we can have it in a few
11  weeks here, two or three weeks.  So I can put you on a CMC
12  calendar.  Let's see.  I can do it on the 7th or the 14th of
13  December.
14          **MS. PIPKIN:**  May I consult my calendar, Your Honor?
15          **MR. ONGARO:**  Would that be in the afternoon or the
16  morning, Your Honor?
17          **THE COURT:**  2:00 p.m.
18          **MS. PIPKIN:**  Either one works for me.  I may ask for
19  the 14th so that we have time to -- communication with our
20  client takes time, so the 14th would probably be slightly
21  better from our end.
22          **MR. ONGARO:**  The 14th is fine, Your Honor.
23          **THE COURT:**  All right.  So I'll schedule you for a CMC
24  on the 14th, and we'll see you again then.  All right.
25          **MR. ONGARO:**  Thank you, Your Honor.

```
1            MS. PIPKIN:  Thank you, Your Honor.  Good to see you.
2    Take good care.
3            THE COURT:  You, too.
4                (Proceedings adjourned at 2:53 p.m.)
```

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4        I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7   DATE:    Thursday, November 18, 2020
 8
 9   _____
10   Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11
12
```