ELIZABETH PIPKIN (243611)
MARWA ELZANKALY (206658)
PATRICK HAMMON (255047)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244
Email:         epipkin@mcmanislaw.com

Attorneys for Defendants,
ZHONGLI SCIENCE AND
TECHNOLOGY GROUP CO., LTD.;
SUZHOU TALESUN SOLAR
TECHNOLOGY CO., LTD.

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MARTIFER-SILVERADO FUND I, LLC<br><br>     Plaintiff<br><br>     vs.<br><br>ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD.; SUZHOU TALESUN SOLAR TECHNOLOGY CO., LTD.; and DOES 1 THROUGH 5, inclusive<br><br>     Defendants. | Case No.:   4:19-CV-04243-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     June 1, 2021<br>Time:     2:00 P.M.<br>Location: Courtroom 1, 4th Floor<br>Judge:    The Hon. Yvonne Gonzalez Rogers |

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 1, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 1301 Oakland Street, Oakland, California, defendants, Zhongli Science and Technology Group Co., Ltd. and Suzhou Talesun Solar Technology Co., Ltd., will move the Court for Judgment on the Pleadings as to Counts One through Four of Plaintiff's First Amended Complaint.

This motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, defendants' Request for Judicial Notice, Plaintiff's First Amended Complaint, the papers and records on file herein, and on such oral and documentary evidence as may be presented at the hearing on the motion.


DATED:  April 27, 2021                              McMANIS FAULKNER


                                                    /s/ Marwa Elzankaly
                                                    ELIZABETH PIPKIN
                                                    MARWA ELZANKALY
                                                    PATRICK HAMMON

                                                    Attorneys for Defendants,
                                                    ZHONGLI SCIENCE AND TECHNOLOGY
                                                    GROUP CO., LTD.; SUZHOU TALESUN
                                                    SOLAR TECHNOLOGY CO., LTD.

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..............................................................................................................7

STATEMENT OF FACTS ...............................................................................................9

LEGAL ARGUMENT.....................................................................................................11

    I.      EACH OF PLAINTIFF'S FOUR CAUSES OF ACTION ARE GOVERNED BY THE THREE YEAR STATUTE OF LIMITATIONS UNDER SECTION 338(d)...........................................................................................................................12

    II.    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED BECAUSE PLAINTIFF'S CAUSES OF ACTION ARE BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS........13

        A.    The Discovery Rule Does Not Apply Here to Excuse Plaintiff's Failure to Timely File This Action......................................................................14

            1.    Plaintiff's Allegations Confirm That it Knew or Should Have at Least Suspected That Talesun USA Was Not Sufficiently Funded.........................................................................................................16

            2.    Plaintiff's Allegations Show That it Knew or Should Have at Least Suspected That Talesun USA Did Not Have Authority To Enter Into the Agreements ...........................................................19

            3.    Plaintiff Has Failed to Meet Its Burden of Showing the Discovery Rule Postponed Accrual of the Statute of Limitations ....................................................................................................................22

        B.    Plaintiff's Causes of Action Accrued at the Time of any Purported Breach of the Agreements at Issue in its Claims .....................................23

CONCLUSION................................................................................................................25

---

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.:  4:19-CV-04243-YGR

# TABLE OF AUTHORITIES

**CASES**

*65 Butterfield v. Chicago Title Ins. Co.*
    70 Cal. App. 4th 1047 (1999) ........................................................ 24

*Ambers v. Wells Fargo Bank, N.A.*
    No. 13-cv-03940 NC (N.D. Cal. March 3, 2014) ...................................... 8, 24

*Bagley, Jr. v. CMC Real Estate Corporation*
    923 F.2d 758 (9th Cir. 1991) ........................................................ 12

*Campbell v. Upjohn Co.*
    676 F.2d 1122 (6th Cir. 1982) ....................................................... 19

*Cansino v. Bank of America*
    224 Cal.App.4th 1462 (2014) ..................................................... 7, 15

*Consiglio v. Brown*
    No. 1:16-cv-01268-AWI-SAB (PC) 4 (E.D. Cal. May 17, 2019) ........................ 11

*Czajkowski v. Haskell & White, LLP*
    208 Cal. App. 4th 166 (2012) .................................................... 14, 22

*Das v. WMC Morg. Corp.*
    831 F. Supp. 2d 1147 (N.D. Cal. 2011) ............................................... 13

*Dayco Corp. v. Goodyear Tire & Rubber Co.*
    523 F.2d 389 (6th Cir. 1975) ........................................................ 19

*Filice v. Boccardo*
    210 Cal. App. 2d 843 (1962) ........................................................ 13

*Forcier v. Microsoft Corp.*
    123 F.Supp.2d 520 (N.D. Cal. 2000) ................................................. 13

*Fox v. Ethicon Endo–Surgery, Inc.*
    35 Cal.4th 797 (2005) .............................................................. 23

*GE Engine Services UNC Holding I, Inc. v. Century Indem. Co.*
    250 F. Supp. 2d 1237 (C.D. Cal. 2001) ............................................... 12

*Guido v. Koopman*
    1 Cal. App. 4th 837 (1991) ......................................................... 22

*Gutierrez v. Mofid*
    39 Cal.3d 892 (1985) ............................................................... 24

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.:   4:19-CV-04243-YGR

*Hobart v. Hobart Est. Co.*
    26 Cal.2d 412 (1945) ................................................................. 7, 15, 22

*Hunt v. Cty. of Shasta*
    225 Cal. App. 3d 432 (1990) ................................................................. 12

*Investors Equity Life Holding Co. v. Schmidt*
    195 Cal. App. 4th 1519 (2011) ................................................................. 14

*Jolly v. Eli Lilly & Co.*
    44 Cal.3d 1103 (1988) ................................................................. 15, 24

*Lyles v. State of California*
    153 Cal. App. 4th 281 (2007) ................................................................. 13

*Lynwood Investments Cy Ltd., v. Maxim Konovalov, et al.*
    No. 20-CV-03778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) ........................ 13

*Miller v. Indiana Hosp.*
    562 F.Supp. 1259 (W.D. Pa. 1983) ................................................................. 8

*Norgart v. Upjohn Co.*
    21 Cal.4th 383 (1999) ................................................................. 8, 14, 15, 22

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*
    57 Cal. App. 4th 835 (2007) ................................................................. 23

*Public Employees' Retirement System v. Moody's Investors Service, Inc.*
    226 Cal. App. 4th 643 (2014) ................................................................. 23

*Redisegno.com, S.A. de C.V. v. Barracuda Networks, Inc.*
    No. 5:20-cv-00316-EJD, 2020 WL 3971622 (N.D. Cal. July 14, 2020) ........................ 12

*Sharaf v. Starbuzz Tobacco, Inc.*
    719 Fed.App'x. (9th Cir. 2018) ................................................................. 8, 24

*Sylve v. Riles*
    15 Cal. App. 4th 23 (1993) ................................................................. 12

*Westlands Water Dist. v. U.S., Dept. of Interior*
    805 F. Supp. 1503 (E.D. Cal. 1992) ................................................................. 12, 16

*Yerkovich v. MCA Inc.*
    11 F. Supp. 2d 1167 (C.D. Cal. 1997) ................................................................. 12

*Yetter v. Ford Motor Company*
    428 F. Supp. 3d 210 (N.D. Cal. 2019) ................................................................. 12, 22

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.:   4:19-CV-04243-YGR

**STATUTES**

Civ. Proc. Code § 312 .............................................................................. 13

Civ. Proc. Code § 335 .............................................................................. 13

Civ. Proc. Code § 338(d) .............................................................. 7, 8, 13, 15

**RULES**

Fed. R. App. P. 32.1; 9th Cir. Rule 36-3(b) ............................................ 24

Fed. R. Civ. P. 12(c) ................................................................................ 11

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.:   4:19-CV-04243-YGR

Defendants, Zhongli Science and Technology Group Co., Ltd., ("Zhongli Science"), and Suzhou Talesun Solar Technology Co., Ltd., ("Suzhou Talesun"), (collectively, "defendants"), request that this Court grant their motion for judgment on the pleadings, and enter judgment in defendants' favor, on the grounds that Counts One through Four of plaintiff, Martifer-Silverado Fund I, LLC's ("plaintiff"), First Amended Complaint, ("FAC"), are barred by the three-year statute of limitations applicable under California Code of Civil Procedure section 338(d), ("Section 338(d)").

Plaintiff's claims arise out of the alleged negotiation and purported breach of three agreements for the sale of a number of solar projects—all of which occurred in late 2012 and early 2013. Plaintiff claims that defendants, through their alleged "subsidiary," Talesun Solar USA, Ltd. ("Talesun USA"), misrepresented to plaintiff that: (a) Talesun USA had "sufficient liquid capital" and was "not subject to any financing contingency;" and (b) Talesun USA had full authority, and did not need third party approval, to enter into and carry out the terms of the agreements. Because all of the negotiations relating to these agreements, as well as the events plaintiff claims constitute their breach, occurred in late 2012 and early 2013, plaintiff's claims accrued at that time. Plaintiff, however, did not file its complaint until July 24, 2019, over **six years later**.

Since plaintiff did not file its complaint until more than three years after the statute of limitations passed, plaintiff has the burden of pleading that the statute was somehow tolled. Plaintiff may attempt to now argue that its untimely claims are excused by the so-called "discovery rule," even though it did not plead as much in the FAC. Under this rule, plaintiff would need to establish, as an initial matter, that it did not "discover" its claims until three years before filing its complaint. *Cansino v. Bank of America*, 224 Cal.App.4th 1462, 1472 (2014). But that is not the end of the analysis. Plaintiff must also plead that it "was not negligent in failing to make the discovery sooner and that [it] had no actual or presumptive knowledge of facts sufficient to put [it] on inquiry." *Hobart v. Hobart Est. Co.*, 26 Cal.2d 412, 437 (1945).

1    Although plaintiff claims that it did not "confirm" its allegations until it took depositions

2 in the State Court Action in 2019, this does not meet its burden of pleading late discovery or that

3 it was not negligent in failing to discover its claims earlier.  The discovery rule, therefore, does

4 not rescue its stale causes of action.

5    Moreover, even if plaintiff had pleaded facts that might make the applicability of the

6 discovery rule plausible, judgment should still be entered because plaintiff's complaint is glaring

7 with allegations that confirm that plaintiff was fully aware of its claims in late 2012 and early

8 2013.  Plaintiff's own allegations prove there was no delayed discovery; to the contrary, the FAC

9 makes plain that plaintiff had actual knowledge of any potential claims at the time the relevant

10 events occurred.

11    Finally, even if plaintiff's foregoing allegations do not show it had actual knowledge of

12 its potential claims years ago, any purported breach of these agreements, all of which occurred in

13 late 2012 and early 2013, was sufficient to put plaintiff on "inquiry" notice of any purported

14 fraud claims, thereby triggering the statute of limitations.  *See e.g.*, *Sharaf v. Starbuzz Tobacco,*

15 *Inc.*, 719 Fed.App'x. 618 (9th Cir. 2018); and *Ambers v. Wells Fargo Bank, N.A.,* No. 13-cv-

16 03940 NC, 2014 WL 883752 at *7-8 (N.D. Cal. March 3, 2014).

17    The Court should grant defendants' motion and enter judgment against plaintiff on the

18 grounds that its claims are barred by the three year statute of limitations under Section 338(d).

19 To hold otherwise would frustrate the purpose of the statute of limitations to "stimulate plaintiffs

20 to assert fresh claims against defendants in a diligent fashion," and to "protect defendants from

21 the stale claims of dilatory plaintiffs."  *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 395 (1999).

22 Defendants bring this motion now before the parties have to engage in complicated, timely, and

23 expensive litigation, in connection with claims that are untimely.  *See Miller v. Indiana Hosp.*,

24 562 F.Supp. 1259, 1268 (W.D. Pa. 1983) (recognizing that early motions for judgment on the

25 pleadings "may save the parties needless and often considerable time and expense which

26 otherwise would be incurred during discovery and trial").

27 ///

28 ///

Plaintiff filed its original complaint on July 24, 2019, and its FAC on April 10, 2020. Dkts. 1 & 33. Plaintiff alleges the following in its FAC:

Plaintiff is a limited liability corporation organized under the laws of Delaware, which formerly maintained its principal place of business in San Francisco, but alleges it no longer conducts intrastate business in California. Dkt. 33 at 2, ¶ 6. Defendant, Zhongli Science, is a Chinese corporation with its principal place of business at No. 8 Changkun Road, Southeast Economic Development Zone, Changshu, Suzhou, Jiangsu, China. *Id*. at 3, ¶ 8. Defendant, Suzhou Talesun, is a Chinese corporation with its principal place of business at No. 1 Talesun Road, Shajiabang, Changshu, Suzhou, Jiangsu, China. *Id.* at 3, ¶ 9. Talesun USA is a subsidiary of Suzhou Talesun, registered to do business in California in 2011 and purportedly conducted business in the United States on behalf of defendants. *Id*. at 3-4, ¶ 11.

The three alleged contracts "underlying this dispute," include "a November 28, 2012, Master Membership Interest Purchase Agreement ("MIPA"), a December 31, 2012, Standstill Agreement, and an August 30, 2013, Letter Agreement." *Id.* at 4, ¶ 15.

In May 2012, Talesun USA allegedly approached plaintiff regarding defendants' purported interest in purchasing plaintiff's ownership rights in certain solar power projects located throughout California. *Id.* at 5, ¶ 22. Plaintiff alleges that Eric Ma signed these three alleged agreements on behalf of Talesun USA. *Id*. at 9, ¶ 45. Under the MIPA, Mr. Ma represented that Talesun USA had sufficient liquid capital to allow it to timely perform its obligations and that it had the authority and power to enter into the MIPA. *Id.* at 9, ¶¶ 46-47.

Talesun USA, however, purportedly did not make the initial full closing payment required under the MIPA. *Id*. at 19, ¶ 49. Plaintiff and Talesun USA negotiated the Standstill Agreement in an attempt to "help salvage the transaction." *Id*. at 10, ¶¶ 54-57. According to plaintiff, as of January 10, 2013, "it became clear that the Parents[1] had no intention of performing under the Standstill Agreement." *Id*. at 12, ¶ 64.

---

[1] In its FAC, plaintiff refers to defendants as the "Parents," and claims that Talesun USA often referred to defendants as "HQ." Dkt. 33 at 3, ¶10.

On March 18, 2013, defendants purportedly "proposed new settlement terms." *Id.* at 14, ¶ 72. However, Talesun USA's director informed plaintiff that he did not know if those terms would be honored. *Id.* Although plaintiff does not provide any detail as to the alleged "Letter Agreement," plaintiff asserts that Talesun USA ultimately failed to perform its obligations under all three agreements. *Id.* at 2, ¶1.

On December 22, 2016, plaintiff filed the State Court Action. (See *Defendants' Request For Judicial Notice in Support of Motion for Judgment on the Pleadings*, served and filed herewith ("RFJN"), Exh. A.) On April 20, 2017, plaintiff filed a First Amended Complaint in the State Court Action, ("State Court FAC"), adding two additional causes of action for breach of the Standstill Agreement and the Letter Agreement. *Id.* Exh B.

The State FAC does not name defendants herein as defendants in the State Court Action. The State FAC does allege, however, that "Defendant Talesun Solar USA Ltd. ("Talesun USA") was formed as a U.S. subsidiary of Zhongli Talesun Solar (based in China) ("Talesun China"), a leading international producer of solar modules and solar cells and itself a major division of Zhongli Science and Technology Group Co., Ltd., a successful manufacturer of industrial components that is traded on the Shenzhen stock exchange." *Id.,* Exh B, ¶ 2. Plaintiff alleges further that "[o]n information and belief, after failing to perform and admitting default," under the documents at issue, "Talesun China took steps to effectively wind down Talesun USA and formed a new entity, Zhongli New Energy USA Co., LLC." *Id.*, Exh. B, ¶ 3.

In its State FAC, plaintiff claims that Talesun USA entered into the MIPA on November 28, 2012, and allegedly breached the agreement when it did not make a "required Closing Date Payment" on November 30, 2012, and "further breached its obligations" on or before December 31, 2012. *Id.,* Exh B, ¶¶ 5, 10-11, & 25. Plaintiff further claims that Talesun USA entered into the Standstill Agreement on December 31, 2012, and breached by failing to make the closing date payment due on January 10, 2013. *Id.,* Exh B, ¶¶ 14-17 & 31. Finally, plaintiff alleges that Talesun USA entered into a Letter Agreement with plaintiff on August 30, 2013, which was breached in January, 2013. *Id.,* Exh B, ¶¶ 18-20.

1    In its State FAC, plaintiff made a point of pleading that "[p]ursuant to Section 5.1 of the

2  MIPA, Talesun USA represented and warranted that it had authority and power to enter into the

3  MIPA and to perform its obligations without obtaining any further consent or approval from any

4  third party." *Id.*, Exh B, ¶ 6.  Plaintiff further alleged that "[p]ursuant to Section 5.1.8 of the

5  MIPA, Talesun USA represented and warranted that it had sufficient liquid capital (or committed

6  sources of capital) to permit it to timely perform its obligations under the MIPA, that its

7  performance was not subject to any financing contingency, and that it knew of no circumstances

8  or conditions that could reasonably be expected to prevent its performance." *Id.*, Exh. B, ¶7.

9    Plaintiff also filed a Second Amended Complaint on October 3, 2018, and a Third

10  Amended Complaint on February 7, 2019, in the State Court Action, both of which contain the

11  same allegations referenced above. *Id.*, Exs C & D.

12    Plaintiff did not file this action until July 24, 2019, more than six and a half years from

13  the date of the final alleged breach of the Letter Agreement.  Plaintiff's FAC in this case asserts

14  four causes of action for purported fraudulent inducement, fraudulent concealment, negligent

15  misrepresentation, and conspiracy, all pertaining to the agreements at issue herein.  Dkt. 33 at

16  17-20, ¶¶ 85-108.  Plaintiff's claims rely primarily on their allegation that defendants, through

17  Talesun USA, misrepresented that Talesun USA had the authority to enter into the agreements at

18  issue and that it was sufficiently funded to do so.  *Id.*

19    Plaintiff attempts to justify its failure to timely raise these claims by alleging that it was

20  not until depositions were taken in the State Court Action, in July 2018, and in 2019, wherein

21  witnesses "confirmed" that Talesun USA was purportedly not sufficiently funded and that

22  defendants "controlled" Talesun USA.  *Id.* at 14-16, ¶¶ 73-75 &79-80.

23                              **<u>LEGAL ARGUMENT</u>**

24    A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed-

25  but early enough not to delay trial…."  Fed. R. Civ. P. 12(c).  A motion filed after the pleadings

26  are closed, but before an action is set for trial, is considered "early enough not to delay trial."

27  *Consiglio v. Brown*, No. 1:16-cv-01268-AWI-SAB (PC), 2019 WL 2153138, at *4 (E.D. Cal.

28  May 17, 2019).

Such a motion "challenges the legal sufficiency of the opposing party's pleadings," and is proper when "even if all material facts in the pleadings under attack are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. U.S., Dept. of Interior*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). Furthermore, "[d]ismissal under Rule 12(c) is proper if the complaint shows on its face that it is time-barred by the applicable statute of limitations." *Redisegno.com, S.A. de C.V. v. Barracuda Networks, Inc.*, No. 5:20-cv-00316-EJD, 2020 WL 3971622, at *2 (N.D. Cal. July 14, 2020) (citing *Hunt v. Cty. of Shasta*, 225 Cal. App. 3d 432, 440 (1990) and *Yetter v. Ford Motor Company*, 428 F. Supp. 3d 210, 231 (N.D. Cal. 2019)). The question of whether an action is barred by the statute of limitations becomes a question of law "where reasonable minds can draw but one conclusion from the evidence." *Sylve v. Riles*, 15 Cal. App. 4th 23, 26 (1993).

Indeed, courts have not hesitated to dismiss cases that are untimely in response to a motion for judgment on the pleadings. *See, e.g.*, *Yetter*, 428 F. Supp. 3d at 222-225 (judgment on the pleadings granted as to plaintiff's claims for fraud and concealment as barred by the applicable statute of limitations); *Yerkovich v. MCA Inc.*, 11 F. Supp. 2d 1167, 1173-1175 (C.D. Cal. 1997) (judgment on the pleadings granted as to plaintiff's unconscionability claims as barred by the applicable statute of limitations); *Bagley, Jr. v. CMC Real Estate Corporation*, 923 F.2d 758, 760-762 (9th Cir. 1991) (judgment on the pleadings granted as to plaintiff's civil rights claims as time barred); *Hunt, supra*, 225 Cal. App. 3d at 446 (judgment on the pleadings granted where plaintiffs' claims under the Subdivision Map Act were barred as untimely).

Finally, in ruling on a Rule 12(c) motion, a court "generally may not consider any material beyond the pleadings." *GE Engine Services UNC Holding I, Inc. v. Century Indem. Co.*, 250 F. Supp. 2d 1237, 1239 (C.D. Cal. 2001). A court, however, may consider matters that are subject to judicial notice. *Id.*

I.   **EACH OF PLAINTIFF'S FOUR CAUSES OF ACTION ARE GOVERNED BY THE THREE YEAR STATUTE OF LIMITATIONS UNDER SECTION 338(d)**

Plaintiff's FAC alleges four causes of action: 1) Fraudulent Inducement; 2) Fraudulent Concealment; 3) Negligent Misrepresentation; and 4) Conspiracy/Aiding and Abetting.

California Code of Civil Procedure sections 312, et seq., set forth the time period within which civil actions must be commenced: "Civil actions, **without exception,** can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued." Civ. Proc. Code § 312 (emphasis added).

The statute of limitations for plaintiff's four causes of action is three years. With respect to the two causes of action for fraud, "[a]n action for relief on the ground of fraud or mistake" must be commenced "[w]ithin three years" of accrual. Civ. Proc. Code §§ 335 and 338(d). This same three year statutory period of limitations applies to claims for negligent misrepresentation. *Das v. WMC Morg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011). Finally, a claim for "conspiracy" that is based on allegations of fraud is also governed by the same three year statute of limitations set forth under Section 338(d). *Filice v. Boccardo*, 210 Cal. App. 2d 843, 846 (1962).[2] Thus, plaintiff's claims must have been brought within three years of the date these actions "shall have accrued." Civ. Proc. Code §§ 312, 335 and 338(d).

## II. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED BECAUSE PLAINTIFF'S CAUSES OF ACTION ARE BARRED BY THE THREE YEAR STATUTE OF LIMITATIONS.

"Generally, a cause of action accrues for purposes of the statute of limitations, and the applicable limitations period begins to run, when the plaintiff has suffered damages from a wrongful act." *Lyles v. State of California*, 153 Cal. App. 4th 281, 286 (2007). Here, the purported "wrongful acts" that serve as the basis of plaintiff's four causes of action occurred in 2012 and 2013.[3] As set forth above, the three agreements that plaintiff claims it was fraudulently induced to enter into were all negotiated and allegedly executed in 2012 and 2013. Dkt. 33 at 4,

---

[2] It should be noted that civil conspiracy cannot serve as an independent claim, "but rather is a theory of liability for an underlying tort." *Lynwood Investments Cy Ltd., v. Maxim Konovalov, et al.,* No. 20-CV-03778-LHK, 2021 WL 1164838, at *16–17 (N.D. Cal. Mar. 25, 2021).

[3] Since plaintiff's four causes of action are based on the same factual allegations, the statute of limitations began running for these claims at the same time. (See e.g. *Forcier v. Microsoft Corp.*, 123 F.Supp.2d 520, 527 (N.D. Cal. 2000) ("Because the Court concludes that Forcier's claims for fraud, constructive fraud, breach of contract, and unfair competition all arose out of the alleged misappropriation of his alleged trade secrets, it finds that the Statute of limitations on all five claims began running at the same time."))

¶ 15; RFJN, Exh B, ¶¶ 5, 14 & 18. They were allegedly breached within that same time period, when Talesun USA purportedly did not make initial payments required. (RFJN, Exh. B., ¶¶ 5, 10-12, 13-20, 25, 31, & 37. For example, plaintiff alleges in its State FAC that "while the first closing under the MIPA was scheduled to occur on November 30, 2012…Talesun USA failed to pay MS-Fund the required Closing Date Payment on that date…" *Id.,* ¶ 10. Plaintiff further alleges that Talesun USA "further breached its obligations under the MIPA by failing to purchase the remainder of MS-Fund's equity interests in the project companies on or before December 31, 2012." *Id.,* ¶ 11. Plaintiff claims Talesun USA breached the Standstill Agreement by purportedly failing to make the "Closing Date Payment" by January 10, 2013. *Id.,* ¶ 15-17. Finally, plaintiff alleges Talesun USA breached the Letter Agreement by "failing to pay MS-Fund $399,263 on or before January 10, 2013." *Id.,* ¶ 20.

Thus, plaintiff's action accrued in early 2013 at the latest. It therefore should have been filed by sometime in 2016 at the latest. Instead, plaintiff did not file its complaint herein until July 24, 2019, over six years since the date of the events that lead to plaintiff's claims.

## A. The Discovery Rule Does Not Apply Here to Excuse Plaintiff's Failure to Timely File This Action.

An exception to the general rule that defines when the cause of action accrues, and therefore, when the statute of limitations runs, is the "discovery rule." *Norgart, supra,* 21 Cal.4th at 397. This rule "postpones accrual of a cause of action until the plaintiff discovers, or **has reason to discover**, the cause of action." *Id.* (emphasis added). Although generally, the defendant has the burden of proving an action is barred by the statute of limitations, "when a plaintiff relies on the discovery rule or allegations of fraudulent concealment as excuses for an apparently belated filing of a complaint, 'the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff.'" *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 174 (2012) (quoting *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011)).

The discovery rule is applicable to cases alleging fraud. Section 338(d) provides that a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved

party, of the facts constituting the fraud." Civ. Proc. Code § 338(d). "Because the discovery rule operates as an exception to the statute of limitations, 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.'" *Cansino, supra,* 224 Cal. App. 4th at 1472 (quoting *Hobart, supra,* 26 Cal.2d at 437). Cases interpreting section 338(d), however, "have held that plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he **was not negligent** in failing to make the discovery sooner and that he had no actual or **presumptive** knowledge of facts sufficient to put him on inquiry." *Hobart,* 26 Cal.2d at 437, (emphasis added).

The leading case explaining plaintiff's burden under the discovery rule is *Norgart v. Upjohn, supra.* In that case, the California Supreme Court noted that "the plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least '**suspects … that someone has done something wrong' to him**." *Norgart, supra,* 21 Cal.4th at 397 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988) (emphasis added)). A plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements" (*Norgart*, 21 Cal.4th at 398), and "has reason to suspect when he has 'notice or information of circumstances to put a reasonable person *on inquiry*.'" *Id.* (quoting *Jolly, supra,* 44 Cal.3d at 1110-1111 (italics in original)). A plaintiff "need not know the 'specific facts necessary to establish' the cause of action; rather, he may seek to learn such facts through the 'process contemplated by pretrial discovery.'" *Norgart*, 21 Cal.4th at 398 (quoting *Jolly*, 44 Cal.3d at 1111). During the limitations period, a plaintiff "must indeed seek to learn the facts necessary to bring the cause of action in the first place—he 'cannot wait for' them 'to find' him and 'sit on' his 'rights'; he 'must go find' them himself if he can and 'file suit' if he does." *Norgart*, 21 Cal.4th at 398 (quoting *Jolly*, 44 Cal.3d at 1111). Additionally, a plaintiff may have reason to discover a cause of action, "even if he does not suspect, or have reason to suspect, the identity of the defendant." *Norgart*, 21 Cal.4th at 399.

Here, plaintiff's allegations show that it had every reason to not only suspect, but actually know of the purported misrepresentations it now claims were made. Although defendants dispute the accuracy of plaintiff's allegations and disagree with plaintiff's characterization of the events that occurred, for purposes of this motion, the court must assume plaintiff's allegations are true. *See Westlands Water Dist.*, *supra,* 805 F.Supp. at 1506.

Plaintiff's FAC sets forth two basic categories of "misrepresentations" purportedly made by defendants, through Talesun USA.[4] First, plaintiff alleges that Talesun USA misrepresented that it had "sufficient liquid capital" to allow it to perform its obligations under the MIPA and therefore was not subject to any "financing contingencies." Dkt. 33, at 9, 17 & 19, ¶¶ 47, 87 & 102. Second, plaintiff alleges that Talesun USA misrepresented that Eric Ma and Talesun USA had "full authority" to execute the agreements at issue and could perform "without obtaining any further consent or approval from any third party." Dkt. 33, at 9 & 17-19, ¶¶ 46, 48, 87, 88, 95 & 102. The overwhelming majority of plaintiff's allegations, however, show that plaintiff knew of the purported misrepresentations long before it now claims it first learned of them.

   1.  *Plaintiff's Allegations Confirm That it Knew or Should Have at Least Suspected That Talesun USA Was Not Sufficiently Funded.*

Plaintiff claims that Talesun USA misrepresented that it had "sufficient liquid capital" to allow it to timely perform under the MIPA; that it was "not subject to any financing contingency;" and that it "knew of no circumstances or conditions that could reasonably be expected" to prevent it from performing under the MIPA. Dkt. 33, at 9, 17 & 19, ¶¶ 47, 87 & 102. This Court need look no further than plaintiff's FAC, however, to determine that, at the time of the events at issue, plaintiff had full knowledge of facts putting plaintiff on notice of its claims.

First, although plaintiff claims Talesun USA misrepresented that it was "not subject to any financing contingency," plaintiff alleges, throughout the entire process, that Talesun USA

---

[4] Although defendants' motion does not address this issue, defendants contest that Talesun USA was an alter ego of defendants and therefore, authorized to act on their behalf.

was not providing or relying on its own financials, but rather those of defendant, Suzhou Talesun. More specifically, plaintiff alleges the following:

- In its initial August 2012, Letter of Intent, Talesun USA represented that it would use its own funds to finance the project acquisition, but that "if necessary, [Zhongli Science] can provide a Corporate Guaranty for the payment." Dkt. 33, at 5, ¶¶ 23 & 24.

- "During further due diligence, Talesun Solar provided (plaintiff) with three years of financial reports for [Zhongli Science], **expressly suggesting that the Parents' financial reports would serve as a better indicator of Talesun USA's available capital**." *Id.* at 7, ¶¶ 34 (emphasis added).

- Talesun USA itself provided plaintiff with Suzhou Talesun's financial reports. *Id.*

- "M-S Fund reviewed and relied on these financials along with Talesun USA's express promises of financial backing from [defendants]." *Id.*

- "On December 26, 2012, Mr. Ma shared that Mr. Qi would work with 'our financing department' to try and resolve issues which had arisen regarding Talesun USA's ability to fund/perform under the MIPA. As **Talesun USA had no financing department** (or, apparently, money), Mr. Ma was referring to [defendants'] financing department." *Id.* at 10, ¶ 53 (emphasis added).

- "On December 31, 2012, as the parties were finalizing the Standstill Agreement … **Talesun USA provided M-S Fund with audited financials for [defendant] Talesun Solar as evidence that Talesun USA could satisfy the "Parent Guaranty**; Collateral or Letter of Credit" component set forth in section 1.1(c) of the Standstill Agreement. **M-S Fund reviewed and relied on these financials as an inducement to entering into the Standstill Agreement**." *Id.* at 11, ¶ 57 (emphasis added).

These allegations show that, as of late 2012 and early 2013, plaintiff had full knowledge that Talesun USA may not have sufficient funding and that its performance may have depended on financial backing from defendants.

Equally telling is plaintiff's allegation that in early November 2012, when plaintiff sought consent from California utilities, including Southern California Edison, to transfer the project companies, "the utilities insisted upon reviewing, and [defendants] provided, due diligence materials and financials for [defendants]." *Id.* at 8, ¶ 39. The alleged reason for this was because "**Talesun USA [had] no meaningful financials to provide**." *Id.* (emphasis added).

Plaintiff alleges on numerous occasions that Talesun USA had insufficient funding to meet certain payments and that it had to get funds from the defendants, as follows:

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
Case No.: 4:19-CV-04243-YGR

- Defendants "so undercapitalized Talesun USA that Talesun USA could not even make the $500,000 exclusivity deposit, which was funded entirely by" defendants. *Id.* at 6, ¶ 28.

- When explaining the delay in payment, Mr. Ma stated that defendants "confirmed the wire had been initiated from China, but took longer than expected because [defendants] had insufficient funds in their 'Talesun HK' account." *Id.*

- "In late September 2012, Talesun USA admitted it was so undercapitalized that it could not even make a required $175,000 deposit for professional services…without 'applying for such funds from HQ,'" which plaintiff alleges referred to defendants. *Id.*, at 6, ¶ 29.

- "The MIPA required an initial closing payment of $546,160, but [defendants] only authorized a wire of $500,000." *Id.*, at 10, ¶ 49.

- **"On December 3, 2012, Talesun USA admitted it was so undercapitalized that it could not afford to pay the additional $46,160."** *Id.* (emphasis added).

- "On February 10, 2013, Mr. Ma informed [plaintiff] that he had heard from the Parents concerning settlement, but there was '**no way to get fund out of China during the holiday**.'" *Id.* at 13, ¶ 67 (emphasis added).

- "On February 19, 2013, Mr. Ma informed [plaintiff] that he had attempted, unsuccessfully, to procure certain information from the Parents, including (1) **when they might provide the capital necessary to purchase the project companies…**" *Id.* at 13, ¶ 68 (emphasis added).

In other words, throughout the entire process, according to plaintiff's own allegations, Talesun USA was not providing or relying on its own financials, but rather those of defendant, Suzhou Talesun; it was unable to make payments due under the agreements; it admitted it was so undercapitalized it could not make said payments; and even the utility companies from whom plaintiff sought consent for the deal, insisted on financials from defendant, Suzhou Talesun, as Talesun USA had "no meaningful financials to provide." *Id.* at 8, ¶ 39. If Talesun USA had represented that it had "sufficient liquid capital" and was "not subject to any financing contingency," based on plaintiff's own allegations, it could not be more clear that said representations were not true.

Plaintiff's own allegations thus show that once "it became clear that [defendants] had no intention of performing" under these agreements, which according to plaintiff, was as early as January 10, 2013, plaintiff was on notice of its potential misrepresentation claim. The three year statute of limitations began to accrue at that time. "'[A]n injured party has a positive duty to use

18

diligence in discovering his cause of action within the limitations period. **Any fact** that should excite his suspicion is the same as actual knowledge of his entire claim.'" *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1127 (6th Cir. 1982) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975) (emphasis added)).

> 2. *Plaintiff's Allegations Show That it Knew or Should Have at Least Suspected That Talesun USA Did Not Have Authority To Enter Into the Agreements.*

Plaintiff further alleges that Talesun USA misrepresented that it, or Mr. Ma, had the authority to enter into the agreements at issue and could perform its obligations thereunder, "without obtaining any further consent or approval from any third party." Dkt. 33, at 17, ¶ 87. See also *Id.* at 9, 17 & 19, ¶¶ 46, 48, 88, 95 & 102. Again, however, plaintiff's own allegations show that it had plenty of notice, at the time of these agreements, that these purported representations may not be true. Plaintiff's claims that Talesun USA misrepresented it had full authority and did not need any approval from any third party are undermined by plaintiff's allegations detailing defendants' extensive involvement in the transactions at issue and their necessary "approval" (or lack thereof) at various stages.

First, plaintiff alleges that it had its own, and extensive, direct contact with defendants, that defendants were involved in the negotiations, and that defendants referred to this as "their agreement." In that regard, plaintiff alleges that in the fall of 2012, defendant, Suzhou Talesun, "invited M-S Fund member Hans Isern to attend a signing ceremony in Melbourne, Australia, to be attended by Mr. (Baixing) Wang (Zhongli Group's founder and Chairman)." *Id.,* at 6-7, ¶ 30. At that time, Suzhou Talesun's "support personnel," "had the second LOI translated into Chinese and changed the signatory to Talesun Solar." *Id.* at 6-7, ¶ 30. "During the signing ceremony, Chairman Wang executed a Memorandum of Understanding mirroring the terms of the second LoI." *Id.* at 7, ¶ 32.

Plaintiff further alleges that "[o]n October 10, 2012, (defendants) issued a press release touting **their** agreement to purchase "overseas PV power plant construction" from M-S Fund as a conduit to selling more PV modules (panels) manufactured by the Parents." *Id.* at 7, ¶ 33 (emphasis added). "Following Mr. Isern's trip to Australia to meet the Chairman, the parties

began negotiating the core terms of the actual purchase agreement for the solar project companies. Orrick Herrington & Sutcliffe represented M-S Fund's interests, and **it became clear during negotiations that Reed Smith LLP was negotiating on behalf of [defendants] as they could make no decisions or commitments without [defendants'] approval.**" *Id.* at 7, ¶ 35 (emphasis added).

Defendants also allegedly engaged their own counsel "who oversaw and was actively engaged in the negotiations." *Id.* at 7-8, ¶ 35. "In early October 2012, **[defendants] informed M-S Fund** that **they** would form a new subsidiary – Zhongli Development Holding Ltd. – to serve as the "buyer" of the projects." *Id.* at 8, ¶ 36 (emphasis added). "By October 16, 2012, **the Parents changed their minds yet again**; rather than purchase the project companies through Zhongli Development Holding Ltd., they now wanted to substitute in a new signatory called "Zhongli Investment and Development Company" which they had just formed in Delaware for that very purpose." *Id.* at 8, ¶ 37 (emphasis added). "On November 25, 2012, one day before the scheduled closing date, **the Parents** changed their mind yet again and informed M-S Fund that they now wanted 'Talesun Solar USA Ltd.' to execute the transaction documents." *Id.* at 9, ¶ 43. Finally, on December 3, 2012, "SoCal Edison demanded new due diligence materials because the Parents had swapped in a new entity (Talesun USA) as the purchaser." *Id.* at 10, ¶ 50.

Even in its discussions with Talesun USA, plaintiff alleges numerous occasions when Talesun USA informed plaintiff that defendants, often referred to as "the parents" had to provide their approval, or purportedly expressed frustration that it was not getting necessary approval. For example, plaintiff alleges that in early November, 2012, Mr. Ma informed plaintiff that "he would need to check with [defendants] as to their interest" in purchasing additional project companies." *Id.* at 8, ¶ 38. On November 7, 2012, Mr. Ma informed plaintiff that "since Zhongli Group is a public company in China, the Parent's Board would have to meet to officially approve a purchase of this size ($30.6M)." *Id.* at 8, ¶ 40 (emphasis added). "On November 23, 2012, Mr. Ma reported that he had received **additional instructions from [defendants] as to when they could issue the required letter of credit** and fund the required purchase price." *Id.* at 8, ¶ 42 (emphasis added). On November 27, 2012, Mr. Ma informed plaintiff that their board

20

had "approved the deal," referring to **Zhongli Science's board**, and that they can "close some projects for total $1MM right after the signing." *Id.* at 9, ¶ 44 (emphasis added). "On February 19, 2013, Mr. Ma informed M-S Fund that he had attempted, unsuccessfully, to procure certain information from the Parents, including (1) when they might provide the capital necessary to purchase the project companies and (2) **"what on earth is the agreement that HQ will approve?"** *Id.* at 13, ¶ 68 (emphasis added). Finally, on March 18, 2013, when asked whether defendants would honor new proposed settlement terms, Talesun USA's director responded: "'I sincerely don't know. I myself will not really believe them." *Id.* at 14, ¶ 72.

Even more telling, plaintiff alleges that as early as December, 2012, Talesun USA admitted it had no control over this deal and was purportedly just a "front face" for the whole thing. For example, plaintiff alleges that in December, 2012, "**Talesun USA admitted it was just a "front face" for the entire transaction."** *Id.* at 10, ¶ 50 (emphasis added). "On December 30, 2012, as the parties were negotiating a 'standstill' agreement, Mr. Ma confessed that **the Parents controlled the subsidiary to such a degree as to render Talesun USA a mere instrumentality of the Parents**." *Id.* at 10, ¶ 55 (emphasis added). "Later that night, Mr. Ma shared feedback from the Parents on the draft Standstill Agreement which he noted the Parents were still reviewing." *Id.* at 11, ¶ 56. On January 9, 2013, Talesun's counsel confirmed that "**Talesun USA has no control whatsoever over its affairs."** *Id.* at 12, ¶ 63 (emphasis added). In late February 2013, Talesun USA's "director" "confirmed that the Parents, not Talesun USA, were dictating settlement terms." *Id.* at 13, ¶ 70. "**When asked whether the Parents had any intention of performing the settlement terms being negotiated, Talesun USA's director responded: 'I actually simply do not know.'"** *Id.* (emphasis added). Talesun USA's director also noted that he has "zero confidence on Talesun's execution capability." *Id.*

In fact, on November 8, 2012, plaintiff itself "provided SoCal Edison with a post-acquisition organization chart **showing the project companies were to be owned, collectively, by Zhongli Group** and its two subsidiaries." *Id.* at 8, ¶ 41 (emphasis added). Put simply, plaintiff alleges that defendants were extensively involved in the negotiations of the agreements; defendants used their own financials instead of Talesun USA's finances; Talesun USA told

21

plaintiff it was just a front face for the transactions; Talesun USA also told plaintiff it had to get approval from defendants on almost every step of the way; and that plaintiff was not sure defendants would perform. These alleged facts would put any lay person, let alone a sophisticated company represented by a leading international law firm, on notice that perhaps any purported representation that Talesun USA had authority to act and did not need third party approval, was not correct[5]. Thus, the statute of limitations on plaintiff's four claims began to accrue at least as early as 2013, if not late 2012, and plaintiff's claims are barred by the applicable three year statute of limitations.

### 3. *Plaintiff Has Failed to Meet Its Burden of Showing the Discovery Rule Postponed Accrual of the Statute of Limitations.*

As set forth above, plaintiff has the burden of pleading and proving "facts showing that (it) was not negligent in failing to make the discovery sooner and that (it) had no actual or presumptive knowledge of facts sufficient to put (it) on inquiry." *Czajkowski, supra*, 208 Cal. App. 4th at 174 (quoting *Hobart, supra*, 26 Cal.2d at 437).

Plaintiff attempts to explain its failure to timely raise these claims by alleging that it was not until depositions were taken in the State Court Action in July 2018, and again in 2019, that said witnesses "confirmed" that Talesun USA was purportedly not sufficiently funded and that defendants "controlled" Talesun USA. Dkt. 33 at 14-16, ¶¶ 73-75 &79-80.

These allegations, however, are insufficient to satisfy plaintiff's burden. First, the standard under the discovery rule is not when a plaintiff "confirms" it has possible claims, but when a plaintiff "discovers, or has reason to discover, the cause of action." *Norgart, supra*, 21 Cal.4th at 397. A plaintiff discovers, or has reason to discover, a cause of action when he "at least suspects … that someone has done something wrong to him." *Id.*; see also *Yetter, supra*, 428 F. Supp. 3d at 223 (plaintiff's argument that the statute of limitations was tolled because he

---

[5] In deciding whether one can reasonably rely on an alleged misrepresentation, "the knowledge, education and experience of the person claiming reliance must be considered." *Guido v. Koopman* 1 Cal. App. 4th 837, 843–844 (1991).

"did not have **actual notice** of the facts giving rise to his claims" is rejected because the statute of limitations begins to run when plaintiff "has reason to discover his claims," meaning "when he or she has reason to at least suspect a factual basis for its elements." (emphasis added)).

Plaintiff provides no allegations, reasons, or explanation for why its knowledge regarding the defendants' alleged involvement in the deal—that if true would have clearly indicated to any reasonable person that Talesun USA was not properly funded and did not have the authority to act without approval from defendants—were not sufficient to put it on inquiry at the time of these events. It gives no explanation and sets forth no allegations as to why it failed to suspect or investigate what was clearly before its very eyes, according to its own complaint. (See e.g. *Public Employees' Retirement System v. Moody's Investors Service, Inc.*, 226 Cal. App. 4th 643, 673 (2014); quoting *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 57 Cal. App. 4th 835, 864–865 (2007), claims for misrepresentation are invalid where plaintiff was "'shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth.'" *Id.* (quoting *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal. App. 4th 835, 864–865.))

Indeed, the language plaintiff uses that the falsity of the purported representations was "confirmed" in discovery in the State Court Action indicates that it **did in fact** suspect that it had said claims. Plaintiff's claims, therefore, are clearly untimely.

**B.     Plaintiff's Causes of Action Accrued at the Time of any Purported Breach of the Agreements at Issue in its Claims.**

Even if the events alleged in plaintiff's FAC were not somehow enough to put plaintiff on notice of its claims, the purported breach of the agreements at issue are an "injury" that obligated plaintiff to conduct a reasonable investigation that would have revealed the basis for its so-called claims. "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of **an injury**, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 807-808 (2005) (emphasis added).

---

23

Indeed, "[a]s a general matter, '... it is the discovery of facts, not their legal significance, that starts the statute.'" *65 Butterfield v. Chicago Title Ins. Co.*, 70 Cal. App. 4th 1047, 1054 (1999) (quoting *Jolly, supra,* 44 Cal.3d 1103 at 1113). It is, therefore, "irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." *Gutierrez v. Mofid*, 39 Cal.3d 892, 898 (1985).

Plaintiff alleges that Talesun USA breached the agreements at issue in the State Court Action. Plaintiff's own State Court FAC states that those breaches happened in late 2012 and early 2013. RFJN, Exh B, ¶¶ 11, 15-17 & 20. The representations at issue were made in the very contract that plaintiff claims was breached In its State Court FAC. RFJN, Exh. B, at 2-3, ¶¶ 6-7; compared with Dkt. 33 at 9 & 17-19, ¶¶ 46-47, 87-88 & 95. Thus, given that the representations at issue here were part of the same agreement that plaintiff claims was breached in December, 2012, the MIPA, and in fact has referenced those representations in its State Court FAC, plaintiff was on inquiry notice of any purported misrepresentations at the time of breach of the agreement that contained the misrepresentations. Yet, plaintiff provides no information as to whether it conducted any investigation into these representations, and, if not, what prevented it from doing so.

Courts have held in at least two cases that a breach of contract provides sufficient notice of potential fraud claims, thereby triggering the statute of limitations. For example, in *Sharaf, supra*, the Ninth Circuit upheld the District Court's finding that "Sharaf had reason to discover the fraud when Starbuzz, in or around early 2009, failed to perform as promised in the 2005 Agreement," thereby triggering the statute of limitations. *Sharaf*, 719 Fed.App'x. at 621.[6] Similarly, in *Ambers, supra,* the court held that, because the breach of a contract occurred in 2009, any fraudulent inducement to cause that breach had to have happened beforehand, meaning any complaint for fraudulent inducement filed in 2013 was well outside the 3-year statute of limitations. *Ambers,* No. 13-cv-03940 NC, 2014 WL 883752, at *8.

---

[6] Although this is an unpublished opinion, a party may cite unpublished judicial opinions issued on or after January 1, 2007. Fed. R. App. P. 32.1; 9th Cir. Rule 36-3(b).

## CONCLUSION

For the reasons set forth herein, defendants request that this Court grant defendants' motion for judgment on the pleadings as to Counts I through IV of plaintiff's FAC as barred by the statute of limitations and enter judgment in favor of defendants.


DATED:  April 27, 2021                    McMANIS FAULKNER


                                          /s/ Marwa Elzankaly
                                          ELIZABETH PIPKIN
                                          MARWA ELZANKALY
                                          PATRICK HAMMON

                                          Attorneys for Defendants,
                                          ZHONGLI SCIENCE AND TECHNOLOGY
                                          GROUP CO., LTD.; SUZHOU TALESUN
                                          SOLAR TECHNOLOGY CO., LTD.