ELIZABETH PIPKIN (243611)
MARWA ELZANKALY (206658)
PATRICK HAMMON (255047)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:         epipkin@mcmanislaw.com

Attorneys for Defendants,
ZHONGLI SCIENCE AND
TECHNOLOGY GROUP CO., LTD.,
SUZHOU TALESUN SOLAR
TECHNOLOGY CO., LTD.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| MARTIFER-SILVERADO FUND I, LLC<br><br>Plaintiff<br><br>vs.<br><br>ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD., a Chinese corporation; SUZHOU TALESUN SOLAR TECHNOLOGY CO., LTD., a Chinese corporation; and DOES 1 through 5, inclusive.<br><br>Defendants, | Case No.:   4:19-CV-04243-YGR<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:       August 17, 2021<br>Time:       2:00 P.M.<br>Location: Courtroom 1, 4th Floor<br>Judge:     The Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 6

LEGAL ARGUMENT ................................................................................................................. 6

    I.    DEFENDANTS' MOTION IS PROPER UNDER RULE 12(C) OF THE RULES OF CIVIL PROCEDURE ................................................................ 6

    II.    THE COURT MAY DETERMINE THAT PLAINTIFF'S CLAIMS ARE UNTIMELY AS A MATTER OF LAW ..................................................... 7

    III.    PLAINTIFF HAS NOT MET ITS BURDEN TO PLEAD SUFFICIENT FACTS TO SHOW DELAYED DISCOVERY OF ITS CLAIMS ................................................................................................................. 8

        A.    Plaintiff Has Not Pleaded Facts To Establish That Its First Set of Allegations—That Talesun USA Misrepresented That It Had "Sufficient Liquid Capital" and Was "Not Subject to Any Financing Contingency"—Is Timely. ........................................... 10

        B.    Plaintiff Has Not Pleaded Facts That Would Establish That Its Second Set of Allegations—That Talesun USA Misrepresented That It Had Authority to Enter Into The Agreements at Issue—Is Timely ............................................................. 11

        C.    The "Facts" Plaintiff Asserts from Outside the Pleadings Do Not Override the Clear Admissions in Plaintiff's FAC ......................... 14

        D.    Plaintiff's Attempt at Circumventing the Statute of Limitations Based Upon Its Mistaken Belief That the Doctrines of Equitable Tolling and Estoppel Apply Should Not Be Countenanced ............................................................................ 15

    IV.    PLAINTIFF'S FAILURE TO TIMELY BRING ITS CLAIMS MANDATES THAT THIS CASE BE DISMISSED ....................................... 16

    V.    PLAINTIFF HAS NOT CITED ANY AUTHORITY ALLOWING IT TO OBTAIN DISCOVERY IN ORDER TO ADEQUATELY PLEAD ITS CLAIMS ................................................................................ 18

    VI.    JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED WITHOUT LEAVE TO AMEND BECAUSE ANY ATTEMPT TO AMEND PLAINTIFF'S COMPLAINT WOULD BE FUTILE ................ 19

CONCLUSION .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**

*Addison v. State of California*
  21 Cal. 3d 313 (1978) .................................................................................................. 18

*Ambers v. Wells Fargo Bank*
  2014 WL 883752 at *7-8 (N.D. Cal. March 3, 2014) ............................................... 14

*April. Enterprises, Inc. v. KTTV*
  147 Cal. App. 3d 805 (1983) ................................................................................ 8, 13

*Artis v. D.C.*
  138 S. Ct. 594 (2018) ................................................................................................ 17

*Campbell v. Upjohn Co.*
  676 F.2d 1122 (6th Cir. 1982) .................................................................................. 11

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) .................................................................................................. 18

*Cline v. Reetz-Laiolo*
  329 F. Supp.3d 1000 (N.D. Cal. 2018) ............................................................... 8, 14

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*
  858 F.2d 499 (9th Cir. 1988) ...................................................................................... 8

*Continental Maritime v. Pacific Court*
  817 F.2d 1391 (9th Cir. 1987) .................................................................................. 18

*Davies v. Krasna*
  14 Cal. 3d 502 (1975) ............................................................................................... 18

*Dayco Corp. v. Goodyear Tire & Rubber Co.*
  523 F.2d 389 (6th Cir. 1975) .................................................................................... 11

*E-Fab Inc. v. Accountants, Inc. Services*
  153 Cal.App. 4th 1308 (2007) .................................................................................. 13

*El Pollo Loco, Inc. v. Hashim*
  316 F.3d 1032 (9th Cir. 2003) .................................................................................. 13

*Faulkner v. Burton*
  126 Cal. App. 2d 210 (1954) ...................................................................................... 8

*Fox v. Ethicon Endo-Surgery, Inc.*
  35 Cal.4th 797 (2005) .......................................................................................... 8, 13

*Garret v. SF*
  *818 F.2d 1515* (9th Cir. 1987) .................................................................................. 18

*Garter-Bare Co. v. Munsingwear, Inc.*
  650 F.2d 975 (9th Cir. 1980) .................................................................................................. 7

*GE Engine Services UNC Holding I, Inc. v. Century Indem. Co.*
  250 F. Supp.2d 1237 (C.D. Cal. 2001) .................................................................................. 7

*Guerrero v. Gates*
  442 F.3d 697 (9th Cir. 2006) ........................................................................................... 15, 16

*Haley v. Santa Fe Land Improvement Co.*
  5 Cal. App. 2d 415 (1935) ...................................................................................................... 7

*Hanrahan v. King Cty.*
  2021 WL 75250, at *1 (W.D. Wash. Jan. 8, 2021) .............................................................. 16

*Hobart v. Hobart Est. Co.*
  26 Cal.2d 412 (1945) ....................................................................................................... 8, 13

*In re Deicas*
  137 B.R. 51 (Bankr. S.D. Cal. 1992) ..................................................................................... 7

*Jolly v. Eli Lilly*
  44 Cal.3d 1103 (1988) ......................................................................................................... 18

*Lawson v. J.P. Morgan*
  2014 WL 12561148, *5 (W.D. Wash April 16, 2014) ........................................................ 20

*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*
  2014 WL 3401451, at *10 (E.D. Cal. July 11, 2014) .......................................................... 16

*Lucero v. Cty. of Orange*
  2021 WL 1783099, at *3 (C.D. Cal. May 3, 2021) ............................................................. 19

*Marin Healthcare Dist. v. Sutter Health*
  103 Cal. App. 4th 861 (2002) .............................................................................................. 17

*Merck & Co., Inc. v. Reynolds*
  130 S.Ct. 1784 (2010) .......................................................................................................... 13

*Norgart v. Upjohn Co.*
  21 Cal.4th 383, 395-396 (1999) ........................................................................................... 17

*Nunes v. Ashcroft*
  375 F.3d 805 (9th Cir. 2004) ............................................................................................... 19

*Ralph Andrews Productions, Inc. v. Paramount Pictures Corp.*
  222 Cal.App.3d 676 (1990) ................................................................................................... 8

*Reivera-Torres v. Rey*
  502 F.3d 7 (1st Cir. 2007) .................................................................................................... 18

*Sarmiento v. Sealy, Inc.*
  367 F. Supp. 3d 1131 (N.D. Cal. 2019) ................................................................................... 19

*Sharaf v. Starbuzz Tobacco, Inc.*
  719 Fed.App'x 618 (9th Cir. 2018) .................................................................................... 8, 14

*Somers v. Apple, Inc.*
  729 F.3d 953 (9th Cir. 2013) ................................................................................................. 19

*Trask v. Franco*
  446 F.3d 1036 (10th Cir. 2006) ............................................................................................. 18

*Turner v. Lundquist*
  377 F.2d 44 (9th Cir. 1967) ..................................................................................................... 7

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*
  1 Cal.3d 586 (1970) ................................................................................................................. 8

*United States v. Corinthian Colleges*
  655 F.3d 984 (9th Cir. 2011) ................................................................................................. 19

*United States v. Garan*
  12 F.3d 858 (9th Cir. 1993) ................................................................................................... 15

*Visa Int'l Serv. Ass'n v. Bankcard Holders*
  784 F.2d 1472, 1475 (9th Cir. 1986) ..................................................................................... 18

*Vu v. Prudential Prop. & Cas. Ins. Co.*
  26 Cal. 4th 1142 (2001) ......................................................................................................... 15

*Westlands Water Dist. V. U.S., Dep't. of Interior*
  805 F. Supp. 1503 (E.D. Cal. 1992)......................................................................................... 6

*Yetter v. Ford Motor Co.*
  428 F. Supp. 3d 210 (N.D. Cal. 2019) ..................................................................................... 8

**RULES**

Fed. R. Civ. P. 12(c) ................................................................................................................. 6, 7

Fed. R. Civ. P. 12(h)(2)(B) ........................................................................................................... 7

## INTRODUCTION

The allegations in the First Amended Complaint ("FAC") concede that plaintiff had notice of the grounds for its fraud and concealment claims more than three years before it initiated this case. Rather than take on the impossible task of trying to reconcile its current contentions with its pleading, plaintiff spends the majority of its opposition making irrelevant arguments and repeating unsubstantiated attacks on defendants and their counsel. Plaintiff tries to argue that this motion is really one for summary judgment—even though defendants have not presented any material outside of what is permitted under Rule 12(c) in connection with this motion. Likewise, plaintiff asserts that defendants' counsel have caused it delay in prosecuting its other lawsuit—a misleading claim that, even if true, would have no bearing on the question of timeliness at issue. Plaintiff claims this is an issue of fact that cannot be decided now, but case law makes clear plaintiff's failure to allege specific facts showing it was not on notice and was not negligent in failing to discover the so-called fraud sooner, is a question of law to be determined on the pleadings. Plaintiff clearly cannot allege such facts given its glaring admissions to the contrary. As a matter of law, plaintiff's claims are barred, and defendants' motion for judgment on the pleadings should be granted, without leave to amend.

This is the second action filed by plaintiff related to the events alleged here – not including a demand for arbitration filed by its related entity, Silverado Power. Filing within the applicable limitations period is mandatory and plaintiff cannot hope that the Court will overlook its untimeliness just so that it can have yet another "bite at the apple."

## LEGAL ARGUMENT

**I.  DEFENDANTS' MOTION IS PROPER UNDER RULE 12(C) OF THE RULES OF CIVIL PROCEDURE.**

Plaintiff's attempts to turn this motion into a motion for summary judgment are unfounded. As set forth in defendants' motion, a motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings," and is authorized under Rule 12(c) of the Federal Rules of Civil Procedure. *Westlands Water Dist. V. U.S., Dep't. of Interior,* 805 F. Supp. 1503, 1506 (E.D. Cal. 1992); Fed. R. Civ. P. 12(c). Such a motion can be

6
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, Case No.:   4:19-CV-04243-YGR

1  brought on the grounds that plaintiff has failed to state a claim upon which relief can be granted,
2  and dismissal under this rule is proper where a complaint shows on its face that it is untimely.
3  Fed. R. Civ. P. 12(c) & (h)(2)(B).  In ruling on such a motion, a court "generally may not
4  consider any material beyond the pleadings," except for matters that are subject to judicial
5  notice.  *GE Engine Services UNC Holding I, Inc. v. Century Indem. Co.,* 250 F. Supp.2d 1237,
6  1239 (C.D. Cal. 2001).  The Court can only treat the matter as one for summary judgment under
7  Rule 12(d) if the court is presented with extrinsic evidence beyond that which the Court may
8  consider.  Defendants did not present the court with any extrinsic evidence. Thus, defendants'
9  motion cannot be converted into one for summary judgment.

## II. THE COURT MAY DETERMINE THAT PLAINTIFF'S CLAIMS ARE UNTIMELY AS A MATTER OF LAW.

Plaintiff's next argument—that the issue of whether plaintiff's claims are barred by the statute of limitations is a question of fact and cannot be decided in a motion for judgment on the pleading (or even at summary judgment)— is simply wrong.  Courts may determine, as a matter of law, that there has been discovery of facts sufficient to trigger the three-year statute of limitations in a claim for fraud, under California law, where the circumstances compel the conclusion that a prudent person would have suspected fraud.  *In re Deicas* 137 B.R. 51, 55 (Bankr. S.D. Cal. 1992);  *see also Turner v. Lundquist,* 377 F.2d 44, 47 (9th Cir. 1967) ("[T]he court may determine as a matter of law that there had been 'discovery.'"); *Garter-Bare Co. v. Munsingwear, Inc.,* 650 F.2d 975, 981 (9th Cir. 1980) ("In California it is a question of law whether a plaintiff has sufficiently pleaded circumstances that permit the consideration of a fraud claim more than three years after the events in question.").

A claim is barred on statute of limitations grounds not only where the face of the complaint indicates that the plaintiff had actual knowledge of the facts giving rise to his or her claim, but also where the plaintiff could have discovered such facts, regardless of whether he or she actually did.  *Haley v. Santa Fe Land Improvement Co.*, 5 Cal. App. 2d 415, 421 (1935) ("'Discovery" and 'knowledge' are not convertible terms; and whether there has been a proper allegation as to a 'discovery' of the facts 'constituting the fraud' within the meaning of the

7
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, Case No.:   4:19-CV-04243-YGR

statute of limitations is a question of law to be determined by the court from the facts pleaded."); *see also Faulkner v. Burton*, 126 Cal. App. 2d 210, 214 (1954).  As set forth in defendants' motion, courts will dispose of untimely fraud claims based on the allegations made in the complaint.  *See, e.g., Yetter v. Ford Motor Co.* 428 F. Supp. 3d 210, 222-225 (N.D. Cal. 2019) (granting judgment on the pleadings in a fraud action as barred by the statute of limitations).[1]

### III. PLAINTIFF HAS NOT MET ITS BURDEN TO PLEAD SUFFICIENT FACTS TO SHOW DELAYED DISCOVERY OF ITS CLAIMS.

As set forth in defendants' motion (and in many of the very cases cited in plaintiff's opposition), "plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not **negligent** in failing to make the discovery sooner and that he had no actual or **presumptive** knowledge of facts sufficient to put him on inquiry."  *Hobart,* 26 Cal.2d at 437 (emphasis added).

> Plaintiff carries the burden of pleading and proving fraudulent concealment; she must plead facts showing that [defendant] affirmatively misled her, and that she had neither actual nor constructive knowledge of the facts giving rise to her claim despite her diligence in trying to uncover those facts.

*Cline v. Reetz-Laiolo* 329 F. Supp.3d 1000, 1026 (N.D. Cal. 2018) (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.),* 858 F.2d 499, 502 (9th Cir. 1988)).  "'Conclusory statements are not enough.'"  *Id.*  Instead, plaintiff "'must plead with particularity the circumstances of the concealment and the facts supporting [its] due diligence.'" *Id.*

Nowhere does plaintiff's opposition address the actual allegations made in the FAC or explain how plaintiff purportedly met its burden of pleading, with particularity, that it was not on inquiry notice of its claims, or that it was not negligent in failing to discover them sooner.  Instead, plaintiff spends the overwhelming majority of its brief presenting "evidence" of why it

---

[1] Plaintiff's cases are either inapposite or actually support defendant's position.  Several of the cases cited by plaintiff acknowledge that the Court must consider the facts pleaded in the complaint in determining the timeliness of the claim.  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 809, 811(2005); *Hobart v. Hobart Est. Co.*, 26 Cal.2d 412, 437 (1945); *Ralph Andrews Productions, Inc. v. Paramount Pictures Corp.,* 222 Cal.App.3d 676, 682 (1990); *Sharaf v. Starbuzz Tobacco, Inc.*, 719 Fed.App'x 618, 622 (9th Cir. 2018).  *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 597 (1970), involved parties in a fiduciary relationship (where inquiry notice is not imputed to the plaintiff) – a relationship that does not exist in this case.  Finally, the Court in *April. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 833 (1983), did not grant judgment on the pleadings because the basis of the motion required the court to consider extrinsic evidence, outside of the face of the pleadings, unlike defendants' motion that relies solely on the pleadings and judicially noticeable facts.

purportedly could not have known that Eric Ma did not have authority to sign the agreements at issue. Plaintiff's alleged misrepresentations, however, are broader, and plaintiff's FAC shows that plaintiff had clear notice of at least some of these misrepresentations, sufficient for the statute of limitations on its fraud claim to have started over six years before it filed this case. As set forth in defendants' motion, the gravamen of plaintiff's case is that defendants, through non-party Talesun USA, induced it to enter into the agreements by making the following "misrepresentations" in 2012 and early 2013:

> (a) Talesun USA had the authority and power to enter into the MIPA, (b) Talesun USA could perform its obligations under the MIPA without obtaining any further consent or approval from any third party, (c) Talesun USA had sufficient liquid capital (or committed sources of capital) to permit it to timely perform its obligations under the MIPA, (d) Talesun USA's performance was not subject to any financing contingency, (e) Talesun USA knew of no circumstances or conditions that could reasonably be expected to prevent the performance under the MIPA; and (f) Mr. Ma had full authority to execute the MIPA, Standstill, and Letter Agreements on behalf of Talesun USA.

Dkt. 33, at 17, ¶87. Plaintiff also alleges the following "concealments:"

> "Defendants intentionally concealed their position that Mr. Ma lacked authority, generally, to bind Talesun USA, and specifically to bind Talesun USA to the Standstill Agreement. Defendants also intentionally concealed their position that neither Mr. Ma nor Talesun USA could conduct material business in the U.S. without Chairman Wang's authorization and approval. Defendants also intentionally concealed that Talesun USA had insufficient funds or control over such funds, required to perform under the Agreements."

Dkt. 33, at 18-19, ¶95.[2] These allegations fundamentally fall into one of two categories: a) that Talesun USA had sufficient liquid capital and was therefore not subject to any financing contingency that could prevent its performance; and b) that Talesun USA had the authority to enter into the MIPA and could perform its obligations without any further consent or approval from any third party. Mr. Ma's authority to **sign** the agreements only relates to one of the various alleged misrepresentations and concealments. Plaintiff has utterly failed to address the alleged misrepresentation about Talesun USA's liquid capital, let alone explain why it purportedly did not discover this until 2019. Plaintiff's own allegations, when taken as true, show that it had knowledge of the purported misrepresentations at least as early as 2013.

---

[2] Plaintiff's third count for "negligent misrepresentation" and its fourth count for "conspiracy" rely on the same alleged "misrepresentations" and "concealments."

9

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, Case No.:   4:19-CV-04243-YGR

Plaintiff cannot erase the admissions made in the complaint with contentions outside of the pleadings.

### A. Plaintiff Has Not Pleaded Facts To Establish That Its First Set of Allegations— That Talesun USA Misrepresented That It Had "Sufficient Liquid Capital" and Was "Not Subject to Any Financing Contingency"—Is Timely.

Plaintiff claims that Talesun USA misrepresented that it had "sufficient liquid capital" to allow it to timely perform under the MIPA (concealing that it did not have "sufficient funds" to perform); that it was "not subject to any financing contingency;" and that it "knew of no circumstances or conditions that could reasonably be expected" to prevent it from performing under the MIPA. Defendants' MJP at 16:17-21. Yet, as set forth in defendants' motion, throughout its FAC, plaintiff alleges again and again that Talesun USA conspicuously indicated it did not have sufficient funding and that it was depending on financial backing from defendants. *Id*. at 16-19. For example, during due diligence associated with the potential transaction, plaintiff was not provided with Talesun USA's financials, but those of defendants, Suzhou Talesun and Zhongli Science. Dkt. 33, at 7, ¶ 34. As early as December 26, 2012, plaintiff itself alleged that there were "issues which had arisen regarding Talesun USA's ability to fund/perform under the MIPA," and plaintiff acknowledged that "**Talesun USA had no financing department**." *Id.* at 10, ¶ 53 (emphasis added). In November 2012, when plaintiff sought consent from utility companies to transfer the project companies, plaintiff claims "the utilities insisted upon reviewing, and [defendants] provided, due diligence materials and financials for [defendants]," the reason being that "**Talesun USA [had] no meaningful financials** to provide." *Id.* at 8, ¶ 39 (emphasis added). Plaintiff does not provide any explanation as to how these allegations signify anything other than that it had knowledge of the basis for this theory more than three years before filing the complaint in this action.

Additionally, plaintiff alleges on several occasions that Talesun USA had insufficient funding to make payments as they were due, which contradicts plaintiff's claim that it was not on notice of Talesun USA's alleged lack of capital. For example, plaintiff alleges that defendants "so undercapitalized Talesun USA that Talesun USA could not even make the $500,000 exclusivity deposit, which was funded entirely by [defendants]". *Id.* at 6, ¶ 28. Thus, according

10

DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, Case No.:   4:19-CV-04243-YGR

to plaintiff, Talesun USA was purportedly not making payments from the outset of the parties' discussions and dealings in 2012. In late September 2012, again before the parties even entered into the MIPA, plaintiff alleged that "Talesun USA admitted it was so undercapitalized that it could not even make a required $175,000 deposit for professional services." (*Id.* at 6, ¶ 29.) On December 3, 2012, according to plaintiff's own allegations, "Talesun USA admitted it was so undercapitalized that it could not afford to pay" the entire $546,160 initial closing deposit, falling $46,160 short. *Id.* at 10, ¶ 49. Even more compelling is that plaintiff admits that as of January 10, 2013, "it became clear that [defendants] had no intention of performing under the Standstill Agreement." *Id.* at 12, ¶ 64. Indeed, it was clear to plaintiff because, according to its own allegations, Talesun USA did not make the allegedly required payments under any of the three purported agreements in 2012 and 2013. These numerous admissions made by plaintiff show that it could not be more clear to anyone – let alone a sophisticated company represented by a national law firm – of the purported "misrepresentation" and "concealment" that Talesun USA had "sufficient liquid capital" and was "not subject to any financing contingency."

Plaintiff does not argue that it did not have notice of these alleged misrepresentations and concealments. Nor does plaintiff rebut the argument that these and other allegations make clear that plaintiff had adequate notice of the purported "misrepresentations" regarding Talesun USA's financing as early as the final quarter of 2012, before the parties purportedly entered into the MIPA. For that reason alone, this Court should grant defendants' motion for judgment on the pleadings. "'[A]n injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. **Any fact** that should excite his suspicion is the same as actual knowledge of his **entire claim**.'" *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1127 (6th Cir. 1982) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975) (emphasis added)). Plaintiff's own admissions show that its suspicions were "excited" at the time of the events in question – but simply sat on its alleged claims for years thereafter.

**B.   Plaintiff Has Not Pleaded Facts That Would Establish That Its Second Set of Allegations—That Talesun USA Misrepresented That It Had Authority to Enter Into The Agreements at Issue—Is Timely.**

Similarly, plaintiff does not respond to defendants' argument that the allegations in its

complaint show sufficient facts existed to put plaintiff on inquiry notice as to whether Ma or Talesun USA in general had authority to bind Talesun USA and enter into the MIPA, Standstill and Letter Agreement, and whether they needed "third party" approval. *See* Defendants' MJP at 19-22. That is because plaintiff's own allegations, if taken as true, prove that facts existed that would have raised suspicion in the mind of any reasonable person regarding Talesun USA's apparent authority to act.

To name just a few, plaintiff alleges that, in December 2012, "Talesun USA admitted it was just a 'front face' for the entire transaction." Dkt. 33, at 10, ¶ 50. "On December 30, 2012, as the parties were negotiating a 'standstill' agreement, Mr. Ma confessed that the Parents controlled the subsidiary to such a degree as to render Talesun USA a mere instrumentality of the Parents." *Id.* at 10, ¶ 55 (emphasis added). "On January 8, 2013, when pressed as to whether the Parents would in fact close under the Standstill Agreement, Mr. Ma admitted he had 'no update from HQ.'" *Id.* at 12, ¶ 62. On January 9, 2013, Talesun's own counsel "described his frustration trying to get any commitments/performance from his clients in China, confirming that Talesun USA has no control whatsoever over its affairs." *Id.* at 12, ¶ 63. On January 10, 2013, it "became clear that the Parents had no intention of performing under the Standstill Agreement," and Mr. Ma "introduced M-S Fund to another third party investor," who "might help mitigate the damage caused by the Parents' refusal to honor their commitments." *Id.* at 12, ¶ 64.

Following these allegations, the next section of plaintiff's FAC is titled "Subsequent Settlement Negotiations **Confirmed that Talesun USA was Merely a Conduit for the Parents' Business Interests**." *Id.* at 13, ¶ 66. In February, 2013, as the parties were negotiating settlement terms, "[w]hen asked whether the Parents had any intention of performing the settlement terms being negotiated in the Standstill Agreement, Talesun USA's director responded: **'I actually simply do not know," also noting that he has "zero confidence on Talesun's execution capability**." *Id.* at 13, ¶ 70. (emphasis added). "On February 19, 2013, Mr. Ma informed M-S Fund that he had attempted, unsuccessfully, to procure certain information from the Parents, including (1) when they might provide the capital necessary to purchase the project companies and (2) "**what on earth is the agreement that HQ will**

1  **approve?**" *Id.* at 13, ¶ 68 (emphasis added).

2  Plaintiff claims it could not have had notice that Mr. Ma did not have authority, or that
3  Talesun USA could not act on its own without approval from defendants because Mr. Ma signed
4  three separate agreements, showing them a genuine effort to salvage the MIPA.  Yet, plaintiff's
5  allegations show that throughout the process, Talesun USA informed plaintiff that it was not in
6  control and it had no idea if the parents would perform, or even "what on earth is the agreement"
7  that the parents would have approved – even introducing plaintiff to another investor.

8  The cases cited by plaintiff to support its argument otherwise are inapposite.  In *E-Fab
9  Inc. v. Accountants, Inc. Services*, 153 Cal.App. 4th 1308 (2007), although plaintiff's employee
10 was employed there for 7 years, plaintiff did not learn of its employee's embezzlement and her
11 criminal record until 2003, and therefore its claim filed against the employment agency that
12 recommended her did not accrue until that time.  *Id.* at 1321-1323.  The Court noted that
13 plaintiff's cause <u>and</u> its injury were imperceptible until that time.  *Id.* at 1326.  *Hobart v. Hobart
14 Estate Co.,* 26 Cal.2d 412 (1945) involved parties in a fiduciary relationship where "the same
15 degree of diligence is not required."  *Id.* at 439-441.  In *Fox v. Ethicon Endo-Surgery, Inc.*, 35
16 Cal. 4th 797 (2005), plaintiff filed a medical malpractice action against her surgeon and learned
17 during his deposition that the cause of her injury was the manufacturer of the stapler used in her
18 surgery – something she clearly could not have known without this information from her
19 surgeon.  The Court ruled it was proper to delay discovery of her products liability action "unless
20 the plaintiff has reason to suspect that his or her injury resulted from a defective product."  *Id.* at
21 813.  Here, plaintiff had every reason to suspect, and in fact, was told outright, of the purported
22 misrepresentations at issue.  In *El Pollo Loco, Inc. v. Hashim* 316 F.3d 1032, 1039 (9th Cir.
23 2003), the Court addressed tolling of a breach of contract claim where there was fraud such as
24 plaintiff did not even know of the breach.  Here, plaintiff has known of the purported breach
25 since late 2012 and early 2013, and filed a separate action for breach of the agreements at issue
26 in 2016.  *April Enterprises, Inc. v. KTTV* 147 Cal.App.3d 805 (1983), also involved parties in a
27 fiduciary relationship. *Id.* at 828.  *Merck & Co., Inc. v. Reynolds,* 130 S.Ct. 1784 (2010),
28 involved a federal class action by investors for securities fraud, whose statute of limitations is

13

1  governed by federal law.  Indeed, more on point, is a case cited by plaintiff, *Cline v. Reetz-*
2  *Laiolo,* 329 F.Supp.3d 1000 (N.D. Cal. 2018), wherein the court granted defendant's motion to
3  dismiss plaintiff's claim for conversion, where she alleged defendant misrepresented that he
4  would delete her journal, because she did not include "any allegations of her diligence to uncover
5  the misrepresentation." *Id.* at 1026.

6  Finally, it is telling that plaintiff does not address the courts' opinions in *Sharaf v.*
7  *Starbuzz Tobacco, Inc.*, 719 Fed.App'x. 618 (9th Cir. 2018), and *Ambers v. Wells Fargo Bank,*
8  *N.A.,* No. 13-cv-03940 NC, 2014 WL 883752 at *7-8 (N.D. Cal. March 3, 2014), both of which
9  found that any purported breach of the agreements at issue, was sufficient to put plaintiff on
10 "inquiry" notice of any purported fraud claims, thereby triggering the statute of limitations.[3]

### C. The "Facts" Plaintiff Asserts from Outside the Pleadings Do Not Override the Clear Admissions in Plaintiff's FAC.

Plaintiff spends the majority of its opposition arguing new "facts" outside of the pleadings that it claims support its position that it could not have known of the alleged "fraud" until it received the "Hu" declaration or until it took Mr. Ma's deposition in this action.  Such new "facts" should not be part of this Court's consideration, as a motion for judgment on the pleadings is based on the allegations made in the pleadings and any judicially noticeable facts.  However, it is worth noting that these supposed "facts" do not save plaintiff's claims.

For example, plaintiff makes much of the fact that Talesun USA agreed to an LOI in 2012, but in its FAC, plaintiff acknowledges that even at that time, Talesun USA had "no meaningful history or financials of its own" to provide.  Dkt. 33, at 5, ¶24.  Plaintiff notes that Talesun USA was so undercapitalized that it "could not even make the $500,000 exclusivity deposit, which was funded entirely by the Parents." *Id.*, at 6, ¶28.  Although Mr. Ma told plaintiff that the board approved the deal, Talesun USA did not make the full initial closing payment, falling short $46,160, and on December 26, 2012, Mr. Ma informed plaintiff of "issues which had arisen regarding Talesun USA's ability to fund/perform under the MIPA." *Id.,* at 10,

---

[3] Plaintiff only notes that *Sharaf* involved a motion for summary judgment, but that does not change the applicability of the law to the facts pleaded in the First Amended Complaint.

14
DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, Case No.:   4:19-CV-04243-YGR

1  ¶ 53. Although plaintiff alleges Ma represented he had authority to sign the Standstill
2  Agreement, plaintiff claims "[o]n January 8, 2013, when pressed as to whether **the Parents**
3  would in fact close under the Standstill Agreement, Mr. Ma admitted he had "no update from
4  HQ." *Id.*, at 12, ¶ 62 (emphasis added). Plaintiff also alleges that on January 10, 2013, it
5  became clear that **the Parents** had no intention of performing under the Standstill Agreement.
6  *Id*. at 12, ¶ 64. Plaintiff makes much of counsel's involvement, but in its FAC, acknowledges
7  that on January 9, 2013, "Talesun's counsel described his frustration trying to get any
8  commitments/performance from his clients in China, confirming that Talesun USA has no
9  control whatsoever over its affairs." *Id.*, at 12, ¶ 63. According to plaintiff, the parties
10 negotiated three agreements to salvage the deal, but then "Talesun USA ultimately failed to
11 perform its obligations under all three Agreements." *Id.*, at 12, ¶ 66.

Finally, plaintiff also argues that defendants purportedly destroyed evidence and Talesun USA's person most knowledgeable "did not know" why it breached are both evidence of defendants' purported attempts to keep plaintiff from discovering the so-called fraud sooner. But plaintiff's inability to get discovery in a state court action it filed on December 22, 2016, several years after the fact, does not change that plaintiff had notice of what was before its eyes at the time of the events in question in 2012 and 2013.

### D. Plaintiff's Attempt at Circumventing the Statute of Limitations Based Upon Its Mistaken Belief That the Doctrines of Equitable Tolling and Estoppel Apply Should Not Be Countenanced.

Having no answer to defendants' showing that plaintiff's own allegations prove it had knowledge of the basis of its fraud claim outside the limitations period, plaintiff asks the Court to apply equitable tolling or equitable estoppel to excuse the untimeliness of its complaint. Other than *Baker v. Beech Aircraft Corp.*, plaintiff's cases do not involve courts applying either such doctrine to otherwise time-barred claims[4], and actually illustrate why neither applies in this

---

[4] *See, e.g., Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (finding that neither equitable tolling nor equitable estoppel salvaged plaintiff's untimely claims); *United States v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993) (discussing equitable estoppel generally, but not as a means of tolling the statute of limitations)*; Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1154, 33 P.3d 487 (2001) (explaining that defendant would be estopped from asserting a statute of limitations defense if plaintiff could prove that he reasonably relied on defendant's representations regarding bringing the lawsuit within the statutory period).

1  action.  39 Cal. App. 3d 315, 321.  In *Baker*, the court only revived plaintiffs' otherwise untimely

2  claims because the plaintiffs' complaint pleaded facts showing that the defendant had actively

3  concealed the "true facts" from the plaintiffs <u>and</u> that the plaintiffs "had no belief prior to the

4  discovery of the fraud that such concealment had, in fact, occurred."  *Id.* at 324.  Here, even if

5  plaintiff were correct that some information had been concealed by defendants, the plain

6  admissions in its complaint make it clear that plaintiff had "belief prior to the discovery of the

7  [alleged] fraud" regarding the facts underlying its claims.

8        Meanwhile, *Guerrero v. Gates*, cited by plaintiff, explains that equitable tolling may exist

9  when a plaintiff  "possessing several legal remedies ..., reasonably and in good faith, pursues one

10  designed to lessen the extent of his injuries or damage," thereby allowing the statutory period to

11  run.  442 F.3d 697, 706 (9th Cir. 2006).  But a plaintiff whose ignorance of the statutory period is

12  excusable may only file a lawsuit outside that period if he can show that it would not cause

13  "prejudice to the defendants."  *Id.*  Here, plaintiff did not show how it "pursue[d] one [remedy]

14  designed to lessen the extent of [its] injuries or damage" or how its belated filing would not

15  prejudice defendants.  Thus, plaintiff's theory of equitable tolling cannot apply here either.

16  **IV.**    <u>**PLAINTIFF'S FAILURE TO TIMELY BRING ITS CLAIMS MANDATES THAT THIS CASE BE DISMISSED.**</u>

17        According to plaintiff, even though its claims are unquestionably untimely, it should still

18  be allowed to prosecute its case because of the degree to which it claims harm.  In this vein,

19  plaintiff trots out its go-to, but unfounded, arguments that defendants allegedly "destroyed"

20  evidence and are merely attempting to "delay" plaintiff's claims.  There is no merit to these

21  assertions, but even if there were, plaintiff's claims still fail.  Limitations periods are not

22  discretionary regardless of any purported unfairness. "A court must dismiss a claim if

23  the statute of limitations bars it." *Hanrahan v. King Cty.*, No. C20-144 TSZ, 2021 WL 75250, at

24  *1 (W.D. Wash. Jan. 8, 2021); *see also Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of*

25  *Sacramento*, No. CIV. S-14-0666 KJM, 2014 WL 3401451, at *10 (E.D. Cal. July 11, 2014).

26        The purposes of a limitations period are manifold, and include "protecting settled

27  expectations; giving stability to transactions; promoting the value of diligence; encouraging the

28

16

1  prompt enforcement of substantive law; avoiding the retrospective application of contemporary
2  standards; and reducing the volume of litigation." *Marin Healthcare Dist. v. Sutter Health*, 103
3  Cal. App. 4th 861, 872 (2002); *see also Norgart v. Upjohn Co.,* 21 Cal.4th 383, 395-396 (1999).
4  Limitations periods are intended to "bar[] a plaintiff who has slept on his rights." *Artis v. D.C.*,
5  138 S. Ct. 594, 608 (2018).

6      Plaintiff's action illustrates the very reason why statutes of limitations must be enforced.
7  Plaintiff sat on its rights for years but now wants this court to allow its claims to move forward
8  based on some sort of "delayed discovery" because defendants allegedly "destroyed evidence"
9  and because witnesses struggled in depositions in the breach of contract action – ignoring the
10 reality that its sitting on its rights for years is the very real problem, not its unfounded
11 accusations of hiding or destroying evidence by defendants.

12     Even though plaintiff's arguments in this regard are entirely irrelevant, it bears noting
13 that its arguments are factually unfounded.  For example, with respect to its descriptions of what
14 occurred in the state court trial, plaintiff's opposition seriously misrepresents what transpired.
15 The "short staffing" that caused the defendants in the state court action to seek a recess was the
16 emergency order by a doctor that one of lead trial counsel immediately start maternity leave
17 early.  (Declaration of Elizabeth Pipkin in Support of Defendants' Reply, ["Pipkin Decl."], ¶ 3.)
18 Defendants sought, and were granted, a second recess in July 2021 when defendants' counsel
19 found out, just before the trial was set to resume, that its client, Talesun Solar USA Ltd, was in
20 forfeiture status by the California Franchise Tax Board because of a missing tax return from
21 2017.  *Id.* at ¶ 4, Exh. A.  The Court continued the trial for a short period as counsel could not
22 appear for Talesun Solar USA until its status was reinstated.  *Id.*  Talesun USA's status has since
23 been reinstated and trial in that action is set to proceed on September 1.  *Id.*

24     With respect to its oft-repeated claims of "destruction" of evidence, plaintiff has no basis
25 for making such claims.  Even if some evidence was inadvertently lost during the nearly seven
26 years between the execution of the MIPA and plaintiff's filing its complaint that does not mean
27 Talesun Solar USA spoliated documents.  Talesun Solar USA went out of business about two
28 years after the purported execution of the MIPA.  Pipkin Decl.,¶ 10, Exh. E, at 14:23-15:10.

1  Thus, it is understandable that individuals who were not involved with the events of 2012 and
2  2013 struggled to respond to questions and that documents were no longer available.  This is one
3  of the very reasons why statutes of limitations exist.  "The fundamental purpose of such statutes
4  is to protect potential defendants by affording them an opportunity to gather evidence while facts
5  are still fresh."  *Davies v. Krasna*, 14 Cal. 3d 502, 512 (1975).  "It is fundamental that the
6  primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs
7  who have failed to file their action until evidence is no longer fresh and witnesses are no longer
8  available."  *Addison v. State of California*, 21 Cal. 3d 313, 317 (1978).  If evidence is
9  unavailable after the passage of time, it is a problem of plaintiff's making—not defendants'.

## V. PLAINTIFF HAS NOT CITED ANY AUTHORITY ALLOWING IT TO OBTAIN DISCOVERY IN ORDER TO ADEQUATELY PLEAD ITS CLAIMS.

Plaintiff tries to salvage its time-barred claims by arguing it needs discovery, but Rule 12 of the Federal Rules of Civil Procedure, which governs defendants' motion for judgment on the pleadings, does not contain any provision allowing a plaintiff to overcome such a motion by seeking more time for discovery.  Indeed, under Rule 11 of the Federal Rules of Civil Procedure, a pleading should not be filed unless the claims made therein are legally warranted and have or will have evidentiary support.  While Rule 56(d) allows a party opposing a motion for summary judgment to ask the court for additional time to obtain discovery, this rule does not help plaintiff because (1) this is not a motion for summary judgment; and (2) plaintiff has not explained to the Court what additional facts it still needs to discover eight years after the events at issue, and after many years of litigation with Talesun USA relating to this transaction.  Plaintiff's general claim that it needs to depose Mr. Wang and Mr. Qi is nothing more than a fishing expedition hoping to find something to revive its claims, and could not possibly give plaintiff more insight as to what plaintiff itself knew or should have known—the issue raised by this motion.[5]

---

[5] The cases cited by plaintiff do not support its request as they are all cases involving motions for summary judgment—not motions brought under Rule 12 of the Federal Rules of Civil Procedure.  See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Reivera-Torres v. Rey,* 502 F.3d 7 (1st Cir. 2007); *Garret v. SF, 818 F.2d 1515, 1518-1519* (9th Cir. 1987); *Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir. 2006); *Jolly v. Eli Lilly*, 44 Cal.3d 1103 (1988); *Continental Maritime v. Pacific Court,* 817 F.2d 1391, 1395 (9th Cir. 1987); *Visa Int'l Serv. Ass'n v. Bankcard Holders,* 784 F.2d 1472, 1475 (9th Cir. 1986).

1  Indeed, plaintiff has had an extensive amount of time to conduct discovery, but has failed
2  to do so.  The parties had a Case Management Conference with this Court on December 14,
3  2020, over **seven (7) months** ago.  Pipkin Decl., ¶ 5, Exh B.  At that time, this Court told the
4  parties they can do discovery and told plaintiff it "should do so quickly."  (*Id.* at Exh. B, p. 5:2-
5  25.) Plaintiff did not attempt to serve <u>any</u> discovery requests on defendants until July 14, 2021,
6  even though defendants told the Court and plaintiff that they would bring this motion on
7  December 7, 2020, and the motion was filed three (3) months ago on April 27, 2021.  Pipkin
8  Decl., ¶ 8; Dkt. 70, at 3:9-4:5, and 5:15-24 (Joint Case Management Statement); Dkt. 78.

9  Plaintiff accuses defendants of not providing their initial disclosures, failing to also
10 inform the Court that plaintiff also has not served its initial disclosures.  Plaintiff initially
11 proposed to exchange initial disclosures on January 14, 2021, but then continued that date to
12 March 5, 2021.  Pipkin Decl., ¶ 6, Exh. C.  Defendants' counsel asked to continue that date to a
13 later time when one of its counsel had to immediately go on maternity leave.  *Id.* at ¶ 6.   Since
14 then, plaintiff's counsel has declined to agree to a new date for the parties to exchange their
15 initial disclosures.  *Id.* at ¶ 9, Exh. D.  Plaintiff's lack of diligence in conducting any discovery to
16 date mirrors its lack of diligence in bringing its claims.

17 **VI.    JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED WITHOUT LEAVE TO AMEND BECAUSE ANY ATTEMPT TO AMEND PLAINTIFF'S
18 COMPLAINT WOULD BE FUTILE.**

19 "Leave to amend is warranted if the deficiencies can be cured with additional allegations
20 that are 'consistent with the challenged pleading' and that do not contradict the allegations in the
21 original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *see*
22 *also Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1151 (N.D. Cal. 2019) ("But a plaintiff can
23 only cure the complaint's deficiencies 'with additional allegations that are consistent with the
24 challenged pleading and that do not contradict the allegations in the original complaint.'").
25 Dismissal without leave to amend is warranted where, as here, amendment would not save
26 plaintiff's complaint.  *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013); *Lucero v. Cty. of*
27 *Orange*, No. SACV2002359CJCADSX, 2021 WL 1783099, at *3 (C.D. Cal. May 3, 2021).
28 Although there is a five factor test set out in *Nunes v. Ashcroft,* 375 F.3d 805 (9th Cir. 2004), the

court in that case still noted that "[f]utility alone can justify the denial of a motion for leave to amend." *Id.* at 808.  In *Lawson v. J.P. Morgan*, 2014 WL 12561148, *5 (W.D. Wash. April 16, 2014), the Court granted defendant's motion to dismiss, without leave to amend because "[t]he Court cannot conceive of facts that would render Lawson's claims viable."

Here, any proposed amendment would be futile because plaintiff has already conceded that it had notice of the facts pertinent to its fraud claims seven years before it initiated this action.  Plaintiff cannot simply ask the Court to ignore those admissions.[6]

## **CONCLUSION**

Defendants request that this Court grant defendants' motion for judgment on the pleadings as to Counts I through IV of plaintiff's FAC as barred by the statute of limitations and enter judgment in favor of defendants.

DATED:  August 2, 2021

McMANIS FAULKNER

*/s/ Marwa Elzankaly*
ELIZABETH PIPKIN
MARWA ELZANKALY
PATRICK HAMMON

Attorneys for Defendants,
ZHONGLI SCIENCE AND TECHNOLOGY GROUP CO., LTD., SUZHOU TALESUN SOLAR TECHNOLOGY CO., LTD.

---

[6] Defendants object to the Court's consideration of extrinsic evidence that is not judicially noticeable.  To the extent the Court considers such evidence, Defendants further object to Exhibits 3-4, 5-19, and 21-28, 32 to the Declaration of Eugene B. Frid in Support of Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings and Motion for Discovery Under Rule 56(d) ["Frid Declaration"] on grounds of lack of authentication under Federal Rule of Evidence 901.  Exhibits 3-4, 6-7, 10-19, and 22-27 were not sent to or by Mr. Frid and, therefore, he lacks personal knowledge as to their authenticity.  Exhibits 5, 28, and 32 lack any certification by a court reporter and Mr. Frid is not listed as being present at any of the depositions.  Mr. Frid does not claim to have been the author or recipient of the "press release" in Exhibit 8 and provides no foundation for how, when, or where the document was obtained.  Mr. Frid admits that Exhibit 9 was not produced to him or his firm and therefore, he lacks personal knowledge as to its authenticity, and the document lacks a date or signature.  Exhibit 21 was not prepared by Mr. Frid, lacks any bates stamp number indicating it was produced in discovery in this or any other action, and Mr. Frid provides no details on how or when he came into possession of the document.